GEORGE KRUSE v. GEORGE M. KINGSBURY ET AL.

*Bond to the jail limits—Liability of sureties.*

1. A jail-limits bond executed pursuant to the provisions of How. Stat. chap. 310, is given to the sheriff of the county in his official capacity, and stands as indemnity to his successor in office without any written assignment, and during its lifetime may be assigned by the sheriff in office to the party for whose benefit it was given, whenever a breach occurs.

2. A jail-limits bond is in effect a substitute for the custody of the sheriff; and, after admitting the prisoner to the liberty of the jail limits, the sheriff has no longer any power over him, either to restrain or discharge him.

3. Section 5 of chapter 310, How. Stat., authorizes a sheriff who shall have taken a jail-limits bond, upon discovering that any surety to such bond is insufficient, to commit the prisoner who executed the bond to close confinement in jail, until other good and sufficient sureties shall be offered. And it is held that whether the prisoner is or is not in actual confinement when the other sureties are obtained cannot affect the validity of the bond.

4. A judgment debtor, on being arrested on a body execution, gave a jail-limits bond. He was afterwards notified by the successor in office of the sheriff to whom the bond had been given that one of the sureties was insufficient, and that it would be necessary for him to procure a new bondsman. He thereupon took the bond, and secured the signature thereto of an additional surety, and returned the bond to the sheriff. And it is held that the contention that the additional surety did not sign the bond under such circumstances as to bind him is without force.

Error to Cass. (O'Hara, J.) Argued June 6, 1894. Decided September 25, 1894.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*Howell & Carr,* for appellants.

*Harsen D. Smith,* for plaintiff.

LONG, J.  This is an action on a bond to the jail limits.

In 1881 the plaintiff obtained a judgment of $1,000 against the defendant Edward R. Graham for assault and battery.  Graham was arrested upon an execution against his body by Frank M. Sanders, then sheriff of Cass county, and, upon being taken into custody, obtained the liberty of the Cass county jail limits by giving the bond in question.  The bond is given to Sanders, as "sheriff of the county of Cass," and provides that the penalty shall "be paid to the said sheriff, or his certain attorneys, administrators, executors, or assigns," and is upon the condition that said Graham "shall not at any time or in any manner escape or go without the jail limits of said county until legally discharged."  Sanders' term as sheriff expired January 1, 1887, when he was succeeded by Jacob McIntosh, who took possession of the jail January 3, 1887. Sanders at that time turned over to him everything connected with the office except the jail records and the bond in question.  A few days afterwards, McIntosh learned from the plaintiff that Sanders had the bond, and at the same time was informed as to its character.  He at once saw Sanders, and requested the bond of him.  Sanders promised to bring it on that same day, but neglected to do so.  McIntosh finally, after waiting about three months, went to Sanders' house and procured the bond from his daughter, Sanders not being present.  McIntosh put the bond in the safe at the jail office, and held it from that time as sheriff, and delivered it over to his successor at the close of his term of office.  Some time after receiving the bond, McIntosh, upon inquiry, became satisfied that one surety on the bond was insufficient.  He thereupon saw defendant Edward R. Graham, and notified him that it would be necessary for him to get a new bondsman, telling him that, unless he did so, he would have to lock

him up. Graham took the bond, and procured defendant Kingsbury's signature to it, and returned it to McIntosh the same day. At the close of his term of office, McIntosh delivered the bond to his successor, Mr. Reagan, who accepted it, and kept it in the safe at the jail until it was assigned to the plaintiff after breach by Graham's going out of Cass county, September 21, 1892. The bond was never transferred from one' sheriff to another by any formal written assignment, nor was there any schedule or list of property or prisoners made out when the sheriff's office was turned over to successors in office.

It is claimed by the defendants that Sanders, the sheriff, who took the bond, had informed the principal in the bond (Edward R. Graham) that, upon the expiration of his term of office, he could go where he pleased, and that this permission had never been rescinded, and no notice had been given to any of the makers of the bond that either McIntosh or Reagan held the obligation, or claimed to have the prisoner in custody; that the prisoner had never been transferred to either McIntosh or Reagan in conformity with the provisions of the statute; and that neither of those sheriffs ever claimed to have the prisoner in custody, or in any manner concerned himself about his whereabouts, or considered himself in any way responsible for his keeping.

On the trial the court below directed a verdict in favor of the plaintiff.

The defendants claim:

1. That the title to the bond was never transferred, but still remains in Sanders.

2. That the prisoner was never in custody of either McIntosh or Reagan, and hence did not escape, as alleged.

3. That Sanders released him.

4. That the sureties were released by the neglect of the sheriffs.

5. That Kingsbury's signature was not made under such circumstances as to bind him.

Chapter 310, § 1, How. Stat., provides that persons in custody of the sheriff under certain process "shall be entitled to the liberty of the jail limits, which limits shall be co-extensive with the limits of such county, upon executing a bond to such sheriff and his assigns," etc. It is provided further, by sections 3 and 4 of that chapter, that "such bond shall be conditioned that the person so in custody of such sheriff shall not at any time, or in any manner, escape or go without the jail limits of the county until legally discharged;" and that "every such bond taken for the liberties of any jail shall be valid, and shall be held for the indemnity of the sheriff taking the same, and of the party at whose suit the prisoner executing such bond shall be confined." Sections 6 and 7 of the chapter provide for the surrender of the principal by the sureties in the bond to the keeper of the jail at any time before judgment rendered against them on such bond, and they are thereby exonerated from all subsequent liability on the bond. By section 16 it is provided that the bond, after breach, may be assigned by the sheriff taking the same, or his successor in office, or, in case of a vacancy in his office, by his under-sheriff, to the party at whose suit the prisoner is confined; and by section 18 it is provided that the acceptance of such assignment shall be a bar to any action by or on behalf of any party receiving such assignment, against the sheriff or other officer making the same, for any escape, etc.

It is claimed that the bond in question was intended solely for the protection of Mr. Sanders, and not for the protection of the sheriff of Cass county as an officer; that it belonged to Sanders personally, and not to the office, and was incapable of passing to his successor or protecting him. We are satisfied that the statute contemplates that such bond is given to the sheriff in his official capacity, and that it stands as indemnity to his successor in office

without any written assignment, and that during the lifetime of the bond it may be assigned by the sheriff in office to the party for whose benefit it is given, whenever a breach occurs. The phrase "the sheriff taking the same" means the sheriff of the county in which the bond is given, and necessarily includes the succeeding sheriffs of the county. The bond in question was correct in form, running to "F. M. Sanders, sheriff of the county of Cass;" was properly assigned; and the plaintiff, by such assignment, acquired the right to bring suit upon it. How. Stat. § 599, provides for the delivery over of such bond by the outgoing sheriff to his successor in office, and this bond was so delivered.

In *Wilcox v. Ismon*, 34 Mich. 268, the bond was given to the under-sheriff, and the claim was made that the bond was void for informality, and it was said:

"The bond to the sheriff's officer may well be treated as a bond to the sheriff himself. It is to the officer rather than to the individual."

In *Meredith v. Duval*, 1 Munf. 83, a bond was given to the jail limits under a statute which provided that persons in custody might give a bond to the sheriff, which might be assigned by him to the creditor. Action was brought by the assignee. The court said:

"The bond taken by the sheriff for keeping the rules is as much a muniment of safety in behalf of the creditor as the keys of the jail are in relation to a prisoner in close custody, and when legally taken, according to the provisions of the act, would seem to me as much to devolve on a succeeding sheriff at the expiration of the preceding sheriff's term of office as the keys themselves; and this, although the act of 1764, chap. 6, § 1, makes it the duty of the sheriff to assign over the bond '*by him*' taken. This word ' him ' (which in this place is used in the general), is inadequate to exclude the succeeding sheriff from the power to assign the bond under the force of the foregoing principles."

The bond having been properly delivered over to Sheriff Reagan, the prisoner, in contemplation of law, was in his possession, and the going out of the jail limits was an escape from his custody which wrought a forfeiture of the bond. The jail-limits bond is in effect a substitute for the custody of the sheriff; and, after admitting the prisoner to the liberty of the jail limits, the sheriff has no longer any power over him, either to restrain or discharge him.

In *Cargill v. Taylor*, 10 Mass. 208, it was said:

"Bonds given to entitle a prisoner to the liberties of the prison-yard are, in effect, a substitute for the custody of the sheriff. After the enlargement of the prisoner, upon the acceptance or allowance of the bond, his restraint, the custody in which he remains, is altogether of a moral nature,—a sense of his liability and of the responsibility of his sureties in the penalty of the bond. The consent of the creditor is not implied in the transaction. * * * * * A bond regularly taken and allowed discharges the sheriff from any further responsibility for the prisoner's remaining within his custody. The restraint to which he is subject is indeed called the custody of the jailer; not, however, as expressing his power of control or a confinement within the walls of the prison, but the bounds and limits prescribed by law, in which he is kept by the penalty of the bond. The prisoner is to continue a true prisoner in the custody of the jailer, and within the limits of the said prison, until he shall be lawfully discharged, without committing any manner of escape."

In *Call v. Hagger*, 8 Mass. 429, the plaintiff brought suit upon a bond given for the jail limits. Hagger admitted that he had gone outside of the limits, but claimed in defense that he was instructed by the sheriff that he had a right to go. The court, in disposing of the point, say:

"It is agreed in this case that the debtor was out of his proper limits as a prisoner. The defense is that the sheriff deceived him by giving him improper instructions. This cannot avoid the effect of the bond, given voluntarily

by the obligors, and placing the debtor's conformity to its condition at his own peril."

See, also, *Burroughs v. Lowder*, 8 Mass. 373.

In *Lansing v. Fleet*, 2 Johns. Cas. 3, in referring to the plaintiff in execution cases where the sheriff has consented to an escape, Kent, J., says:

" The plaintiff shall never suffer for the sheriff's default. The law is active to help him, and accordingly gives him his election to charge the sheriff or to pursue the defendant," etc.

Benson, J., in the same case, says:

" The law, as collected from the authorities, appears to be that, as it relates to the plaintiff, there is no difference whether the escape is voluntary or tortious, and that he has the same remedies in the former as in the latter case.'*

In the case of *Meredith v. Duval, supra*, the court say:

" A prisoner who gives security for the prison bounds is from thenceforward no otherwise in the custody of the sheriff than as may be sufficient to protect the sheriff against any suit which the creditor may bring against him for not confining the debtor within the walls of the prison. * * * * * He is in the custody of the law, but the sheriff has no longer any power over him, either to restrain him or to discharge him."

In *Lyle v. Stephenson*, 6 Call, 54, the court say:

" After the sheriff has taken a prison-bounds bond from the debtor, * * * * the debtor is then in the custody of the law, and' the sheriff has no power to authorize or prevent his escape."

The same rule is also held in *Codman v. Lowell*, 3 Me. 52, and *Palmer v. Sawtell*, 3 Id. 447.

The point sought to be made, that Kingsbury did not sign the bond under such circumstances as to bind him, has no force. Section 5 of the chapter authorizes the taking of additional security, and whether the prisoner was

in actual confinement or not at the time the new surety was secured cannot affect the validity of the bond.

The judgment must be affirmed.

GRANT, MONTGOMERY, and HOOKER, JJ., concurred. McGRATH, C. J., did not sit.