## UNITED STATES *v*. STEVENS and others.

*(Circuit Court, W. D. Tennessee. April 24, 1883.)*

1. CRIMINAL LAW—SCIRE FACIAS—BAIL—SURRENDER—DISCHARGE OF SURETIES—EXONERATION—ENTRY ON BAILPIECE—EVIDENCE—REV. ST. § 1018.

Section 1018 of the Revision prescribes a statutory rule of evidence by which the surrender of the principal by the sureties in bail must be made known to the court, and under it parol evidence of the surrender and discharge is inadmissible. It is the fault of the surety not to see that the judge, commissioner, or other officer taking the surrender and granting the discharge makes the proper entry on the bailpiece, and without such entry there can be no defense to a *scire facias* upon the forfeiture.

2. SAME—ENTRY OF EXONERATUR AT THE TRIAL—PRACTICE.

But in a proper case, to prevent the failure of justice, the court may, on motion, at the trial of the *scire facias,* permit the *exoneratur* to be then and there entered according to the statute, if the party be in actual custody, or if, on the facts of the case, the court, in the exercise of a sound discretion, should grant that relief.

*Scire Facias* on Bail-bond.

The principal defendant, R. P. Stevens, was indicted at the October term, 1881, with others for a conspiracy to pass counterfeit money, and the usual writ of *capias* issued for his arrest, returnable to the April term, 1882, under which said Stevens was arrested on March 6, 1882, by the marshal, and taken before one of the circuit court commissioners, when he gave bond in the penal sum of $1,000, with the other defendants herein as his sureties; after which the defendant Stevens was discharged from arrest. The condition of the bond was that the principal defendant should appear, etc., on the fourth Monday of April, 1882, and continue in attendance from day to day until discharged, and abide the decision of the court in the premises. The record shows that the bond was filed with the return of the *capias* on the first day of the term, April 24, 1882. On April 26th, following, the defendant Stevens not appearing, his sureties were called to produce him, their defaults entered, and a judgment *nisi* was rendered in favor of the United States for the penalty of the bond, and the usual writ of *scire facias* duly issued, and was returned by the marshal executed in full.

To this writ of *scire facias* the sureties plead that subsequent to their undertaking on the bond mentioned in said *scire facias,* to-wit, on March 13, 1882, they, as bail for the said R. P. Stevens upon said bond, did arrest and deliver to  *  *  *  the deputy marshal *  *  *  the said Stevens before W. L. Carter, Jr., one of the circuit court commissioners, and requested the said commissioner to commit the said Stevens to the custody of the marshal or other proper officer for safe-keeping, and to discharge these defendants from all liability by reason of their undertaking on said bond; and the said commissioner did then and there, etc., commit the said Stevens to the custody of the marshal, and the marshal, by his deputy, did then and there receive and take into custody the body of the said Stevens, and him did safely keep until March 15, 1882, on which day the said Stevens gave bond, with other sureties than these defendants, for his appearance before this court at its April term, 1882; and upon said last-named bond the said R. P. Stevens was discharged and released

from custody by the said marshal; all of which these defendants are ready to verify, wherefore they pray judgment, etc.

To this plea is filed a general demurrer by the district attorney for the plaintiffs.

*J. B. Clough*, Asst. U. S. Atty., for the United States.

*W. L. Carter, Jr.*, for defendant sureties.

HAMMOND, J. Section 1018 of the Revised Statutes of the United States, under the provisions of which these defendant sureties sought to surrender their principal and relieve themselves from further liability as his bail, provides that—

"Any party charged with a criminal offense and admitted to bail, may, in vacation, be arrested by his bail and delivered to the marshal or his deputy, before any judge or other officer having power to commit for such offense; and at the request of such bail the judge or other officer shall recommit the party so arrested to the custody of the marshal, *and indorse on the recognizance or certified copy thereof the discharge and exoneratur of such bail;* and the party so committed shall therefrom be held in custody until discharged by due course of law."

It will be noticed that the plea does not aver that such discharge and *exoneratur* were indorsed on the bail-bond, or a copy of it, and the demurrer raises the question whether, without the indorsement thereof or some record entry of the facts, the bail were in law discharged, the argument being that the liability of the bail can only be determined by the record.

By the common law and under the earlier English statutes bail could not surrender their principal and be exonerated from liability on their undertaking during vacation, but only during the term, when such surrender, either by the bail or of the defendant voluntarily, was duly entered upon the record of the court, and accordingly it was said:

"If the bail plead a render of the principal, they must conclude their plea *prout patet per recordum;* for this is not to be tried *per pais*, but by the record." 1 Bac. Ab. 218, "Bail, D." So, also, "if the principal surrenders himself in court *in exonerationem manucaptoris*, this ought to be entered of record." 3 Viner, Abr. 444, "Bail, C 7." And "in *scire facias* against the bail, he pleaded that the principal *reddidit se;* and it was ruled a good plea, and that it shall be tried by the record." Id. 493, Z 9. And also "if the defendant *reddidit se* in discharge of his bail, the bailpiece should be marked; otherwise the plaintiff may proceed against the bail." Id. 494, Z 16.

And in discussing the ancient common law on this subject, the same quaint and learned author relates the following case directly in point:

"A. sued B. in three actions and he gave bail to each action. The plaintiff recovered in all, and then the defendant rendered himself, and one of the bail entered an *exoneratur* on the bailpiece, but the rest did not. *Per Curia:* The render is a discharge *in posse* as to all, but not complete and actual as to all till an *exoneratur* is entered upon all." Id. Z 17.

And in a note to the digest of this case it is said:

"It is the practice of the court that the bail are not discharged without entering an *exoneratur* on the bailpiece. * * * But if the bail surrendered the principal fairly, though not strictly regular, they ought to be favored and are indulged by the court," etc. Id.

At common law, therefore, a defense to an action on the bail-bond by way of surrender could only be established by showing from the record that such surrender had been made either of the principal himself voluntarily, or by his sureties; and the record entry of the fact, whether made on the bailpiece filed in court or otherwise properly noted, was styled "the discharge and *exoneratur*" of the bail.

In most if not all the states an innovation has been made on the common law in this regard by allowing such surrender to be made out of court and in vacation, by statutory provisions substantially similar to section 1018 of the Revised Statutes above quoted, and which was originally enacted August 8, 1846. The Tennessee statutes on the subject give the bail the authority to so arrest their principal "on a certified copy of the undertaking," or to delegate an agent "by a written authority indorsed on such copy" to make the arrest, and they are entitled to the aid of the sheriff "by producing a certified copy of the bail-bond, and in person or by agent accompanying said officer to receive the person arrested," and the sheriff is obliged to "return the copy of the bail-bond with an indorsement of his action." Tenn. Code, §§ 5172–5175. And the exact point of law made by the demurrer here is whether our statute (section 1018) has changed the commmon-law rule as to the necessity of record evidence of the fact where such a surrender is pleaded. The words of the statute are, "and at the request of such bail the judge or other officer shall * * * indorse on the recognizance, or certified copy thereof, the discharge and *exoneratur* of such bail." The only possible object of this clause of the statute is to provide proper and legal evidence of the fact of such discharge out of court on a surrender made under the provisions of this enactment, previous to the date of which it could not have been so done; nor does this statute provide any substantially-different method or mode of proof than that previously and now existing at common law, when the surrender is made in court. So far as the

power of the bail *to arrest* their principal is concerned, the statute gives no new right that has not always existed; and this power of the sureties over their principal is of the very essence of the undertaking by bail.

In *Taylor* v. *Taintor,* 16 Wall. 366, the supreme court, in discussing this power, says:

"When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. * * * The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner."

The same principle is curiously expressed in 6 Mod. 231, *Anon.,* in the following language:

"The bail have their principal on a string, and may pull the string whenever they please and render him in their discharge; they may take him up even upon Sunday, and confine him till the next day, and then render him, for the entry in this court is *traditur in ballium,* etc., and the doing it on Sunday is no service of process."

See also, *State* v. *Edwards,* 4 Humph. 226; *Com.* v. *Brickett,* 8 Pick. 137; *U. S.* v. *Bishop,* 3 Yeates, 37; *Parker* v. *Bidwell,* 3 Conn. 84; *Devine* v. *State,* 5 Sneed, 623; *Johnson* v. *Tompkins,* 1 Baldw. 571, 578; *Nicolls* v. *Ingersoll,* 7 Johns. 146, 152.

In the last case it is said, in the opinion of the court, that—

"The power of taking and surrendering is not exercised under any judicial process, but results from the nature of the undertaking by the bail. The bail-piece is not process, nor anything in the nature of it; it is merely a record or memorial of the delivery of the principal to his bail, on security given."

The very nature of a proceeding by *scire facias* is essentially of a record character. The writ is founded upon a record, and recites nothing that is not of record in a court of justice, (*State* v. *Robinson,* 8 Yerg. 370; *State Bank* v. *Vance's Adm'r,* 9 Yerg. 472; *Nicholson* v. *Patterson,* 2 Humph. 448; *Hayes* v. *Cartwright,* 6 Lea, 143; *U. S.* v. *Evans,* 2 Fed. Rep. 147, and cases therein cited at page 150; *Pugh* v. *State,* 2 Head, 227;) nor can the writ issue on a forfeited recognizance or bond not properly taken or filed in and for appearance to the court in which the *scire facias* proceeding is had, (*State* v. *Gassaway,* 11 Humph. 203; *State* v. *Arledge,* 2 Sneed, 229;) nor can the *sci. fa.* contain matters not of record, and it must pursue the record in all material matters, (*Scott* v. *State,* 1 Head, 433; *State* v. *Grigs-*

*ley,* 3 Yerg. 280; *White* v. *State,* 5 Yerg. 183; *Dillingham* v. *U. S.* 2 Wash. C. C. 422.)

Such being the strictness with which this action is bound to and made to depend upon the record on which it is based and from which it derives all its power and efficacy, it is with good reason that defenses to the proceeding, such as is made here, should, in like manner, be made to appear and be proven by the record, as was evidently the intention of congress in enacting the provision contained in section 1018, *supra.* Such a construction accords with the plain language of the statute, and is in full consonance with the general law on the subject existing at the date of its original enactment.

It is a statutory rule of evidence, declaratory, however, of the general law, and founded in a wise policy, analogous to that of the statute of frauds, that the only evidence of the discharge of the sureties in bail shall be the entry by competent authority of the *exoneratur* on the record or the bailpiece, or a copy of them, as the case may be. And it is a sufficient reply to the very able argument of counsel for the defendants that the fact of death of the principal, his imprisonment, or other such excuse, may be shown by parol in defense on a proper plea that, as to the defense in this case, the statute imposes another rule, however it may be in those mentioned by counsel. The fact of the surrender may be the essential *act,* as counsel says, to effectuate the discharge; but the only legal evidence of it, under this statute, is the entry. Again, the answer to the argument that there is no fault of the sureties, but only of the judge or other officer receiving the surrender to make the entry, for which the sureties should not suffer after a surrender, is obvious. The fault is that of the sureties. The officer may be at fault and negligent in failing to perform the ministerial duty of making the entry of the judicial act of ordering the discharge of the sureties; and, possibly, under some circumstances, the officer may be liable to an action for such negligence if the contributory negligence of the surety himself be no defense. But clearly it is the duty of all parties, or their attorneys, to see to it that, in all cases, the clerk or other ministerial officer shall make the proper entries on the record authorized by the judicial judgment, and it is their fault if they do not give this matter their attention. The demurrer must, therefore, be sustained.

On the argument of this case at the bar and in his brief subsequently filed, counsel for the defendants insists that it is within the power and practice of the court to now order the *exoneratur* to be entered, and a formal motion for that purpose has been made; and he

argues that, under the circumstances of this case, said motion ought to be granted. The demurrer admits the facts set forth in the plea to be true, and from them it appears that these defendants did all in their power to relieve themselves from further liability as bail for their principal, except to see that the discharge and *exoneratur* were properly entered on the bailpiece; or, in other words, they omitted to have the proper legal evidence of what they had done in the premises made as prescribed by this statute. The object of bail in a criminal case is to secure the appearance of the defendant in court to answer the charge there pending or to be brought against him; and these sureties, as appears by the plea, delivered their principal into the custody of the marshal for safe-keeping. In *Ruggles* v. *Corey*, 3 Conn. 421, the facts were almost identical with those in the case now under consideration, and on a motion made by the sureties in a proceeding against them after a like surrender, the court ordered the *exoneratur* to be then entered, using this language:

"It is too clear to be questioned that the bail, after the commitment of his principal to jail on his (the bail's) application, can never repossess himself of him, or release him from prison, however anxiously he may be desirous of it. * * * By putting the principal where he must abide the judgment rendered against him the bail is exonerated. As the principal was surrendered before the bail was fixed, the remedy by motion was undoubtedly correct."

See also, *Parker* v. *Bidwell*, 3 Conn. 84; *Strang* v. *Barber*, 1 Johns. Cas. 329; *Pell* v. *Grigg*, 4 Cow. 426; *Brownelow* v. *Forbes*, 2 Johns. 101; *Merrick* v. *Vaucher*, 6 Term R. 50; *People* v. *Judges*, 1 Cow. 54, in which latter case the appellate court, under a *mandamus* proceeding, ordered the court below to enter the *exoneratur*, it having denied the motion made for that purpose originally.

The earlier law writers, while they adhered, as we have seen, with great strictness in maintaining the technical rules of pleading and record proof in *scire facias* actions, yet with equal vigor do they show what constant care the English courts in those times exercised to prevent any injustice being done where good faith and an honest endeavor to relieve themselves from further responsibility characterized the conduct of the bail in the surrender of their principal. In discussing "bail in criminal actions," BACON uses this language:

"If a man's bail, who are the jailers of his own choosing, do as effectually secure his appearance and put him as much under the power of the court as if he had been in the custody of the proper officer, they seem to have answered the end of the law and to have done all that can be reasonably required of them." 1 Bac. Abr. 231, L.

And in treating of "bail in civil actions" the same author says:

"If the principal surrenders himself or the bail render him up, this will dis-charge the bail and may be pleaded to the *scire facias;* but such surrender or render are not sufficient unless the plaintiff or his attorney have notice of it. * * * So, where the principal surrendered himself before the return of the *capias,* yet the plaintiff having had no notice, and there being no discharge of the bailpiece or *exoneratur* entered, and the plaintiff having proceeded to judgment against the bail, the court would not relieve them on motion. * * * But if through want of notice he is at further charge against the bail, that shall not vitiate the surrender, but yet the bail shall not be delivered till they pay such charges." 1 Bac. Abr. 218, D.

The same principle of leniency in such cases to be exercised by the federal courts to prevent injustice has long since existed under an act of congress, now section 1020 of the United States Revised Statutes, which provides that—

" When any recognizance in a criminal cause, taken for or in or returnable to any court of the United States, is forfeited by a breach of the condition thereof, such court may, in its discretion, remit the whole or a part of the penalty whenever it appears to the court that there has been no willful default of the party, and that a trial can notwithstanding be had in the cause, and that public justice does not otherwise require the same penalty to be enforced."

And the Code of Tennessee, on the same subject, (section 5180,) contains the following enactment:

"After the liability of the bail has become fixed by forfeiture, and before payment, they may be exonerated from the liability by the surrender of the defendant and the payment of all costs; but may be exonerated from all costs also, if, in the opinion of the court, they have been in no fault." See, also, Tenn. Code, §§ 5181–5184.

This is a substitute for the former mode of relief in such cases by bill in equity, and permits the court itself, on motion, or other appropriate proceeding, to do what a court of equity would do in the case, and the discretion would be governed by substantially the same rules, I should think. That these defendants are in some form entitled to the benefit of such wise provisions I cannot for a moment doubt. Neither of the statutes cited provide the mode in which such relief is to be sought from the court,—whether by plea, motion, petition, or otherwise; nor have I found any reported case construing them in this regard. In the present attitude of the pleadings here full justice may be obtained by granting the defendant's motion for an order allowing the entry of the *exoneratur,* and judgment may then be entered for the plaintiffs for the cost of the proceeding. These costs having accrued with no fault whatever on behalf of the United States,

on the forfeiture of a bail-bond filed in the usual way on its return-day, with nothing thereon or in the record to show any surrender of the principal, the plaintiffs should not bear the burden of costs which were necessarily incurred on the non-appearance and non-production of the defendant to answer the criminal charge pending in the court against him. Nor do the provisions of the Revised Statutes, § 1020, above cited, in terms apply to a remission by the court of costs, the language being, "such court may remit the whole or a part *of the penalty,*" in its discretion. Whether the court may remit the costs as well as the penalty, either under a general power over costs or by treating them as part of the "penalty" under the above statute, it is not necessary to decide; for, in this case, there should be, in my judgment, no remission of them. Besides, we are not proceeding here to remit a forfeiture under that statute, which is only cited to show how far the law favors the discharge of the sureties where they have performed their duty as jailers of the accused. The costs were incurred by the neglect of these sureties to have their discharge and *exoneratur* properly entered on the bailpiece, and if this had been done no forfeiture could have been taken, and consequently no costs would have accrued, and they should not, therefore, be remitted, although the forfeiture may be.

The motion to now enter the *exoneratur* will be granted, but upon the condition that the costs of the *scire facias* shall be paid by the defendants, who, having shown good cause by this entry against the forfeiture, may have an order to set it aside upon payment of costs. So ordered.