SERVIS *v.* MARSH.

(*Circuit Court, N. D. Illinois.* May 25, 1889.)

1. ESCAPE—UNITED STATES MARSHALS.

The common-law rule that a sheriff is liable to a judgment creditor to the amount of the judgment, for a voluntary escape of the defendant, who is in the sheriff's custody under *cap. ad sat.*, which is of force in Illinois, is applicable to United States marshals for that state

2. SAME—DEPUTIES.

Where the prisoner is in custody of a deputy-marshal, by direction of the marshal, an escape by consent of the deputy is within the rule.

3. SAME—SURRENDER.

It is no defense to an action against the marshal for such escape that the prisoner, after escaping, voluntarily surrendered, and that plaintiff thereafter paid for his keeping, where it appears that plaintiff did not then know of the escape.

At Law. Case submitted on agreed statement.

This case was submitted for trial before the court upon the following stipulation of facts:

For the purpose of obviating the delay and trouble of bringing witnesses into court, it is hereby mutually stipulated and agreed by and between the parties to this suit, through their respective attorneys, that the following statement of facts is to be taken and considered by the court as agreed upon for the determination of this case:

(1) That on April 15, A. D. 1884, in the circuit court of the United States for the Northern district of Illinois, the plaintiff recovered a judgment in an action for a tort against H. M. Ryan, Charles A. Harper, and Horace N. Harris for $3,498 damages and $57.10 costs, and that the same has never been reversed, set aside, or paid in whole or in part.

(2) That a writ of *capias ad satisfaciendum* was duly issued out of said court on said judgment by the clerk of said court, under seal, September 15, 1885, and on the same day said writ was delivered to the said defendant, then United States marshal for the Northern district of Illinois, to be executed by him according to law.

(3) That on the 15th day of September, A. D. 1885, the defendant, as United States marshal, received the said writ, and on the 18th and 19th days of the same month executed the said writ according to law and the command therein, by taking and arresting the said Charles A. Harper and said Horace N.-Harris, respectively, and delivering them into the jail of Cook county, into the custody of the sheriff of Cook county, in said district, for safe-keeping, and made due return upon said writ to that effect.

The plaintiff makes no claim under the first count of his declaration.

(4) That for, during, and until about the 11th day of October, 1886, the defendant kept and retained the said Harper and the said Harris imprisoned in the said Cook county jail, under and by virtue of the said writ.

(5) That all fees due defendant as marshal were duly paid; also, the weekly board for dieting the said Harper and Harris in said Cook county jail was duly paid by the plaintiff, as required by law, up to and until the 20th day of October, 1886.

(6) That on or about the 11th day of October, A. D. 1886, while the said Harper and Harris were so under arrest and so in said Cook county jail, it became the duty of the said defendant, as United States marshal, to take said Harper and Harris out of the jail of Cook county, and to take them before a United States commissioner, on an application made by them for their dis-

charge, then pending. To perform this duty the said defendant sent one E. S. Davis, his deputy United States marshal, to take said prisoners from the said jail, and bring them before said commissioner. And while they were thus taken out of the jail, and in the charge of the said deputy, by the consent and permission of the said deputy, but without the actual knowledge of the said defendant, they went at large, out of the custody and charge of the said deputy, wherever they would, and each went, unattended by said deputy or any one, to his respective home, and there remained,—the said Harris for the space of six hours, and the said Harper for the space of two days. The defendant, on being informed by another of his deputies that the said Harper was out of the jail, immediately sent for said deputy, Davis, and ordered him to retake said Harper into custody; the said Harris having prior thereto voluntarily returned into said jail; and the said Harper, upon the request of the said deputy, Davis, at once returned into said jail; both said prisoners thereafter remaining in said jail a considerable period of time, and until their release as hereinafter set forth. The plaintiff admits the facts of the alleged escape to be as above stated, but insists that the fact that the said Harper and Harris were permitted to go at large by said deputy United States marshal is immaterial, and that the defendant, as marshal, is as fully and in all respects as responsible for and bound by the acts of said deputy in the premises as though the said acts were done by himself in person; and the above stipulation as to the fact that the acts complained of were done by the deputy is to be treated as if evidence showing the same were offered in evidence on the trial by said Marsh, and objected to by plaintiff.

(7) That the plaintiff, having no personal knowledge that the said Harper and the said Harris had been permitted to go at large, out of the custody and control of the defendant, as aforesaid, continued to pay the weekly board and dieting of both said Harper and said Harris up to the 3d day of December, 1886.

(8) That the plaintiff, on the 3d day of December, 1886, notified the defendant that he would not pay the weekly board and dieting of the said Harper or Harris any further, but would hold him as for a voluntary escape of the said Harper and Harris.

(9) That on the 3d day of December, 1886, after the giving to the marshal of the notice last mentioned, the said Harper and the said Harris were let out of the Cook county jail by the jailer; notice that the weekly board due, and by law payable in advance by the said judgment creditor, for the dieting of said Harper and Harris, had not been paid, first having been given to said defendant by the jailer of said Cook county.

(10) That the plaintiff, prior to the commencement of this suit, had paid to said defendant, as his marshal's fees in and about the service of said writ, $13.50, and to the jailer of the said Cook county jail the further sum of $448 in the weekly board and dieting of said Harper and said Harris, being for 64 weeks, each at $3.50 per week for each in advance, while they were so detained in said jail.

(11) Neither before, at, nor after the time when the said defendants in execution, Harper and Harris, respectively, were allowed by said deputy to go to their respective homes, as hereinbefore stated, was either the said Harris or the said Harper possessed of tangible or known goods, chattels, moneys, or property subject to be taken in execution, in payment or satisfaction of the demand against them under which they were imprisoned as aforesaid. But the above matter mentioned in this item is objected to by the plaintiff as immaterial, on the ground that the solvency or insolvency of the said Harper and Harris, respectively, is entirely immaterial.

*S. K. Dow,* for plaintiff.

*W. P. Black,* for defendant.

BUNN, J. The agreed facts bring this case squarely within the rule of the common law that if a defendant, when taken in execution, is seen at large for ever so short a time, it is an escape which will make the sheriff liable to the plaintiff for the amount of the debt. It is the duty of the sheriff or marshal to obey the writ, and the writ commands him to take the defendant, and him safely keep, so that he may have him ready to satisfy the plaintiff. This is the rule in case of a voluntary or willful escape from arrest on final process. In arrest upon mesne process the rule is different; and, if the sheriff brings in the body on the day of the return, it is sufficient. But in arrest upon final process of execution he must have the body ready at all times to be produced before the court; and if he do not, but voluntarily suffer the prisoner to depart out of his control for never so brief a time, he cannot retake him, but makes himself personally liable to the plaintiff for his debt and costs.

It is contended by defendant's counsel that the common law has never been made applicable to United States marshals, and so does not apply to the case. But I think this a mistaken view. It is true that congress has never adopted the common law; but this is not essential. I take it that, in the absence of any law of congress qualifying or limiting the liability of marshals, they are governed in these matters, as to the rights of third persons, by the law of the state where they are located and doing business. The transaction in suit took place in Illinois, and the law of that state will control the rights of the parties; and, Illinois having at an early day in its history adopted the common law of England, that law will govern, unless there is some statutory law or regulation, either of the state or of congress, (of which I know none,) to change it. Undoubtedly congress might limit or change the liability of marshals, but until it does so the state law will govern.

Defendant's counsel has cited the case of *Randolph* v. *Donaldson*, 9 Cranch. 84, and seems to rely upon it as an authority to show that the common-law rule is not applicable to marshals. But that case is not an authority for the defendant. Congress had recommended the states to allow United States prisoners to be committed to state jails, and the state of Virginia had so provided. In accordance with these provisions the marshal had committed a debtor in execution to the keeper of a state jail. That case decides that where a debtor taken in execution was delivered by the marshal into custody in a state jail, and put in charge of the keeper of the jail, and escaped from such keeper without the fault of the marshal, the marshal was not liable. The act of congress limited the responsibility of the marshal to his own acts and the acts of his deputies. The keeper of the jail was neither in fact nor in law the deputy of the marshal. He was a county officer, not appointed by the marshal, nor in any way responsible to him, nor removable at his will. When a debtor was regularly committed to a state jail by the marshal, he was no longer in the custody of the marshal, nor controllable by him. Therefore the marshal was not liable for the default of the jailer. There is a clear implication running all through the case that, if the prisoner had escaped through the fault of the marshal or his deputy, the marshal

would have been liable, and the judgment of the circuit court affirmed. In the case at bar, the prisoner went at large by consent of the deputy-marshal who had him in custody. The marshal gives his bond for the faithful discharge of the duties of his office, and is as much responsible for the acts of his deputy as for his own acts. The deputy gives bond to the marshal, and is to him alone responsible. The public look to the marshal for indemnity, and know nothing of his deputies.

The defendant's counsel rely in some degree upon the defense set up by plea that after the prisoners were permitted to go at large they voluntarily surrendered themselves up to the deputy, and were again confined in jail, and their keeping paid for by the plaintiff. This appears to be the fact, but it also appears that their escape was unknown to the plaintiff. Under these circumstances the facts do not constitute a defense. All the authorities cited on the point by defendant relate to cases where the escape was negligent, and not voluntary. No doubt, when the escape is not voluntary,—that is, where it is without the knowledge, consent, or fault of the officer,—there may be a recapture when fresh pursuit is made, and such recapture may be pleaded in an action for the debt. But this was never the rule in cases where the officer permitted the prisoner to go at large. In such cases he cannot recapture, and, if he do, that will not affect his liability for the execution debt. In fact, by such recapture he makes himself liable to an action for false imprisonment, and the prisoner will be discharged on *habeas corpus*. In these cases it is held that not even a fire or a mob or anything less than the act of God or the public enemies, will avail to excuse the officer. Such seems to be the settled doctrine to this day in England, and generally in this country, wherever the common law prevails, and whether this was the original rule of the common law before the statutes of 13 Edw. I., c. 11, (Westminster II., c. 11,) and 1 Rich. II., c. 12, were enacted, or whether these statutes introduced the rule, it is quite unnecessary to inquire. The rule is one of public policy, and has been deemed necessary to insure good faith and diligence on the part of sheriffs and marshals. It may seem in such a case as this, where there has been no personal fault attaching to the marshal, to be a stringent rule. But the answer to such a suggestion is that the act of the deputy is the act of the marshal, and the marshal must do his duty. There should be a judgment for the plaintiff for the amount of the execution debt and costs, with interest at 6 per cent. from the day of the escape. See *Hawkins* v. *Plomer*, 2 W. Bl. 1048; *Alsept* v. *Eyles*, 2 H. Bl. 108; *Bonafous* v. *Walker*, 2 Term R. 126; *Elliott* v. *Duke of Norfolk*, 4 Term. R. 789; 2 Phil. Ev. 397; *Southcote's Case*, 4 Coke, 84*b*; *Fairchild* v. *Case*, 24 Wend. 381; *Rainey* v. *Dunning*, 2 Murph. 386; *Patten* v. *Halsted*, 1 N. J. Law, 277; *Adams* v. *Turrentine*, 8 Ired. 147; *State* v. *Halford*, 6 Rich. Law, 58; *Seymour* v. *Harvey*, 8 Conn. 70; *Bowen* v. *Huntington*, 3 Conn. 423; *Clapp* v. *Hayward*, 15 Mass. 276; *Call* v. *Hagger*, 8 Mass. 429; *Hopkinson* v. *Leeds*, 78 Pa. St. 396; *Powers* v. *Wilson*, 7 Cow. 274; *Riley* v. *Whittiker*, 49 N. H. 145; *Sherburn* v. *Beattie*, 16 N. H. 437; *Filewood* v. *Clement*, 6 Dowl. 508; *Butler* v. *Washburn*, 25 N. H. 251; Phil. Ev. pt. 2, c. 3, p. 398.