## SMITH, STURGEON & CO. *v.* GROSSLIGHT.[1]

1. BOND TO JAIL LIMITS—ESCAPE—VOLUNTARY RETURN—PLEAD-
   INGS—AMENDMENT AT TRIAL.

   The defendant sureties, in an action upon a bond to the jail limits, should be allowed to amend their plea at the trial to cover a point then brought for the first time to the attention of their counsel, that their principal had voluntarily returned within the jail limits before the commencement of suit; since that fact, if established, would, under 3 Comp. Laws 1897, § 10513, constitute a complete defense.

2. SAME—LIABILITY OF SURETIES.

   A bond to the jail limits of a county merely substitutes for the custody of the sheriff the custody of sureties, whom only the act of God or the public enemy will excuse for failure to keep the principal within the county.

3. SAME—ABSENCE TO ANSWER CRIMINAL PROCESS.

   Where the principal in such a bond voluntarily left the county named therein, and went into an adjoining county, to answer to a criminal charge before a justice of the peace, he was guilty of an escape, though the examination occupied only a short time, and he immediately thereafter returned to the jail limits.

---

[1] Plaintiff filed an application for rehearing, asking that the reversal be without costs, which was denied April 3, 1900.

Error to Wayne; Lillibridge, J. Submitted January 9, 1900. Decided February 20, 1900.

Debt by Smith, Sturgeon & Company, a corporation, against Fred L. Grosslight, principal, and Louis R. Grosslight and James D. Burns, sureties, upon a bail bond. From a judgment for plaintiff on verdict directed by the court, defendants bring error. Reversed.

*Bowen, Douglas & Whiting*, for appellants.

*Warner, Codd & Warner*, for appellee.

Long, J. In an action begun by *capias*, Smith, Sturgeon & Co. obtained a judgment in the Wayne circuit court against the defendant Fred L. Grosslight, who was subsequently arrested on a *capias ad satisfaciendum*. He, with the two other defendants, executed a bond to the jail limits to the sheriff of the county of Wayne, and was released. Afterwards, and on the 16th day of April, 1898, and while still under bail to the jail limits, on a criminal complaint made before a justice of the peace of the county of Macomb, Fred L. Grosslight was arrested in the city of Detroit by a deputy sheriff of Macomb county, and taken before the justice who issued the warrant. The justice set his examination for the 27th day of April, 1898, and thereupon he and the defendant Louis R. Grosslight, on the 16th day of April, 1898, did enter into a recognizance in the sum of $500 for the appearance of said Fred L. Grosslight before said justice at 2 o'clock in the afternoon of April 27, 1898. Afterwards, and on the 27th day of April, 1898, and by and with the advice of counsel, who was conversant with all the facts, Fred L. Grosslight, in pursuance of the proceedings already had before said justice of the peace, appeared before the justice at the city of Mt. Clemens, in Macomb county, and submitted to an examination, and was then and there discharged by the justice of the peace, and did immediately return to the city of Detroit. Plaintiff's counsel, having seen in the

papers something about the arrest, employed a detective to ascertain for what date the examination had been set, and, learning that it would be had on the 27th day of April, did on that day telephone to Mt. Clemens, and, on being told that Fred L. Grosslight was in that city, obtained from the sheriff of the county of Wayne an assignment of the bond to the jail limits, and commenced an action on the bond against the appellants. There was some question as to what time this suit was begun; witness Codd testifying that, to the best of his recollection, it was begun somewhere between 2:30 and 2:45, and the indorsement placed upon the summons in the office of the sheriff showing that it was received by the sheriff at 3:05. Fred L. Grosslight testified that he and his counsel left Mt. Clemens to go to Detroit at half past 1 of the same day; that there was some delay at Leesville, and that the car stayed there 10 or 12 minutes; and that they reached the city hall in Detroit before 3 o'clock. His attorney, John Miner, testified that the proceedings at Mt. Clemens on April 27th were ended in very short order, and that he and Grosslight hastened at once to catch the car that was on the point of leaving; that his recollection was not distinct as to the time they left, but he did recollect that the car was delayed some minutes at Leesville, in Wayne county. He also testified that he accompanied Grosslight and the officer when Grosslight was arrested, and that on the 27th day of April he again went to Mt. Clemens with Grosslight, and at that time told him he was answerable under his recognizance, or subject to rearrest. This dispute as to the time of leaving Mt. Clemens and the return of Grosslight to the limits of Wayne county on April 27th had not been brought to the attention of appellants' counsel until the trial, and then counsel asked for leave to amend the plea so as to cover that point. Permission to do so was refused, and the court struck out, against appellants' objection, all testimony relative to the time of the return, and directed a verdict for the appellee. Afterwards appellants made a motion

for a new trial, based on the files and records and the affidavit of Frederick W. Whiting. This motion was denied. Defendants bring error.

But few errors are assigned. It is claimed by counsel for defendants that the court erred:

1. In refusing to direct the verdict for defendants.

2. In striking out the testimony relative to the time of return of defendant to Wayne county on April 27, 1898.

3. In refusing to permit the defendants to amend the plea by giving notice of the return to Wayne county of defendant Fred L. Grosslight before the commencement of the action.

Section 10513, 3 Comp. Laws 1897, provides that: "In every suit brought by a sheriff on such bond [that is, a bond to the jail limits], the defendants may give notice of a voluntary return of the prisoner to the liberties of the jail from which he escaped, or a recaption of such prisoner by the sheriff from whose custody he escaped, before the commencement of such suit, and may give evidence thereof in bar of such action;" and section 10523 provides that, when the action is brought by the assignee of the bond, the defendants shall be entitled to give this notice. At the time of filing the plea in the case, counsel for defendants gave no notice that a defense would be made that Grosslight had returned to the county before the suit was commenced on the bond. On the trial, however, defendant Fred L. Grosslight testified that he returned from Mt. Clemens, and arrived in the city of Detroit before 3 o'clock; that he looked at the city hall, and saw it was not yet 3 o'clock, when he reached there. So, if his testimony be true, he must have been within the jail limits before the writ was issued by which this suit was commenced. If this be the fact, it would be a bar to the action. After this testimony was introduced, counsel for defendants asked permission to amend the notice under the plea by setting up the fact that defendant was within the jail limits when the suit was commenced. We think the court should have allowed the amendment, and sub-

mitted that question for the determination of the jury. This statute of amendments should be liberally construed. It was said in *Beecher* v. *Wayne Circuit Judges*, 70 Mich. 367 (38 N. W. 324):

"This statute has always been very liberally construed, and this court has said in numerous cases that courts should be liberal in permitting notice of special matter of defense to be given or amended in furtherance of justice;" citing *Browne* v. *Moore*, 32 Mich. 254; *Johnson* v. *Kibbee*, 36 Mich. 269; *Hopkins* v. *Briggs*, 41 Mich. 175 (2 N. W. 199).

See, also, *Willet* v. *Railroad Co.*, 114 Mich. 411 (72 N. W. 260), and cases there cited.

The further claim of defendants' counsel is that, under the facts here shown, the court should have directed the verdict in favor of defendants; in other words, it is contended that there was no escape within the meaning of the bond. We think this contention cannot be sustained. Grosslight was upon the jail limits of the county under a bond which provided, in substance, that he should not at any time or in any manner escape or go without the jail limits of the county of Wayne until legally discharged. His sureties undertook, by executing the bond, to keep him within the jail limits. He was as much within the custody of the sureties on the bond as he would have been in the custody of the sheriff had he remained in jail. The jail-limits bond is, in effect, a substitute for the custody of the sheriff. *Kruse* v. *Kingsbury*, 102 Mich. 100 (60 N. W. 443). As was said in *Meredith's Adm'x* v. *Duval*, 1 Munf. 83: "The bond taken by the sheriff for keeping the rules is as much a muniment of safety in behalf of the creditor as the keys of the jail are in relation to a prisoner in close custody." The liability of the bondsmen on these bonds is strict and absolute; and "if the defendant, having once been taken in execution, be afterwards seen at large for any, the shortest time even, before the return of the writ, it is an escape, unless it be by consent of the plaintiff himself given previously to or at the time of the

discharge." 1 Burrill, Prac. 312. In *Fairchild* v. *Case*, 24 Wend. 381, the action was brought against the sheriff for an escape. A verdict was returned for plaintiff. Defendant's counsel moved for a new trial, upon the ground, among others, that a question to a witness, "By what means and in what manner did the prisoner break jail?" was overruled. The court, by Cowen, J., said:

"The question put and overruled as to the means or manner of escape is not shown to have been relevant. It might have been answered by saying that the escape was effected by means and in a manner which took from the charge of negligence in the sheriff without showing any real excuse, as that it was by the act of God or the enemies of the country. The latter seem to be the only excuses as to manner and means which the sheriff can set up."

The same rule is laid down in *Brown* v. *Tracy*, 9 How. Prac. 93; *Wheeler* v. *Hambright*, 9 Serg. & R. 390, 396; *Browning* v. *Hanford*, 5 Hill, 588 (40 Am. Dec. 369); *Green* v. *Hern*, 2 Pen. & W. 167; *Bissell* v. *Kip*, 5 Johns. 89; *Rainey's Ex'rs* v. *Dunning*, 2 Murph. (N. C.) 386; *State* v. *Halford*, 6 Rich. Law, 58; *Patten* v. *Halsted*, 1 N. J. Law, 277.

The rule seems, therefore, well settled, that nothing but the act of God or the enemies of the country will excuse the sheriff for an escape; and the same rule is applicable as against the sureties on the bond to the jail limits. This is also the rule of the federal courts. In *Servis* v. *Marsh*, 38 Fed. 794, the court distinguished between the rule in case of an escape on final process and upon *mesne* process. It was said:

"But in arrest upon final process of execution, he must have the body ready at all times to be produced before the court, and, if he do not, but voluntarily suffer the prisoner to depart out of his control for never so brief a time, he cannot retake him, but makes himself personally liable to the plaintiff for his debt and costs."

The rule is laid down in 1 Burrill, Prac. 99, that if the defendant, after he is arrested, and before he is committed

to prison, be rescued from custody, such rescue will excuse the sheriff from having his body in court at the return of the writ; but, if rescued after committal, the sheriff is not excused, but will be answerable as for an escape.   That same rule is laid down in *Brown* v. *Tracy*, 9 How. Prac. 93.   Under the circumstances here shown, it does not appear but that the defendant went out of the county voluntarily on April 27, 1898.   Under the rule of the common law, the bondsmen would be liable as for an escape; and the only question in the case is whether the suit was commenced during the time that the principal defendant was without the jail limits.   This may be shown as a bar to the action, under section 10523, 3 Comp. Laws 1897; and, as we have said before, that question should have been submitted to the jury.

The judgment must be reversed, and a new trial awarded.

The other Justices concurred.