## OPTNER v. BOLGER.

### No. 7418.

Circuit Court of Appeals, Sixth Circuit.

March 11, 1938.

242

Dean S. Face, of Grand Rapids, Mich., for appellant.

John M. Dunham, of Grand Rapids, Mich. (Dunham & Sherk, of Grand Rapids, Mich., on the brief), for appellee.

Before HICKS and SIMONS, Circuit Judges, and FORD, District Judge.

SIMONS, Circuit Judge.

The precise problem here involved is one of first impression. It arises in an action against a United States marshal for an escape from the jail limits to which a judgment debtor in custody of the county sheriff upon a body execution issued out of the United States District Court had been privileged under bond in pursuance of state statute. Neither research of counsel nor that of the court discloses controlling or analogous precedents to govern decision in the unusual circumstances presented.

The facts in respect to issues considered are not in controversy. The plaintiff is trustee in a bankruptcy proceeding pending below. He there recovered a judgment against Charles S. Abbott for fraud and deceit, and, Michigan law permitting, sued out a body execution under which Abbott was taken into custody by the United States marshal and lodged in the jail of Berrien county. Subsequently Abbott furnished a bond, executed jointly to the marshal and the sheriff, and was allowed the freedom of the jail limits, which by state statute, section 14729, Comp.Laws 1929, are coextensive with the limits of the county. Six months later the court below in another case ordered Abbott to show cause why he should not be punished for contempt in failing to comply with its interlocutory injunction. There followed negotiations with the plaintiff for permission to leave Berrien county to respond to the order, the effect of which we do not consider. It is sufficient to say that Abbott went to Grand Rapids in Kent county in response to the court's order, and that while absent the present action was commenced. When it reached issue on the pleadings, the plaintiff moved for summary judgment under state practice, and the defendant moved to dismiss. The plaintiff's motion was overruled and that of the defendant granted. The appeal followed.

Rev.St. § 991, T. 28, § 844, U.S.C., 28 U.S.C.A. § 844, provides: "When any person is arrested or imprisoned in any State, on mesne process or execution issued from any court of the United States, in any civil action, he shall be entitled to discharge from such arrest or imprisonment in the same manner as if he were so arrested and imprisoned on like process from the courts of such State."

Rev.St. § 992, T. 28, § 845, U.S.C., 28 U.S.C.A. § 845, provides: "Persons imprisoned on process issuing from any court of the United States in civil actions, as well at the suit of the United States as at the suit of any person, shall be entitled to the same privileges of the yards of the respective jails as persons confined in like cases on process from the courts of the respective States are entitled to, and under the like regulations and restrictions."

Section 14751, Comp.Laws Mich.1929, provides: "If any prisoner committed to any jail, by virtue of any capias ad respondendum, * * * shall go or be at large, without the jail limits of the county in which he shall have been imprisoned, without the assent of the party at whose suit such prisoner shall have been committed, the same shall be deemed an escape of such prisoner, and the sheriff having charge of such jail shall be answerable therefor to such party in an action of trespass on the

case to the extent of the damages sustained by him."

Section 14729, Comp.Laws 1929, provides for liberty of the jail limits upon the execution of a bond. Section 14730, as amended by Pub.Acts Mich.1933, No. 213, governs the amount of the bond, and section 14731 provides that it shall be conditioned that the person so in custody of the sheriff shall not at any time nor in any manner escape or go without the jail limits of the county until legally. discharged. Section 14732 provides that the bond shall be held for the indemnity of the sheriff taking the same and of the party at whose suit the prisoner executing the bond has been confined. Section 14736 again defines an escape and declares its consequences to be the forfeiture of the bond, while section 14738 provides that a judgment against the sheriff after notice in an action for escape shall be conclusive evidence of his right to recover against the prisoner and his surety in an action upon the bond.

██ The Michigan statutes were construed by the Supreme Court of the State in Smith, Sturgeon & Co. v. Grosslight, 123 Mich. 87, 81 N.W. 975, 977, as substantially adopting the rule of the common law in respect to an escape of a prisoner confined to jail limits and the consequences of such an escape. It said: "The rule seems, therefore, well settled, that nothing but the act of God or the enemies of the country will excuse the sheriff for an escape; and the same rule is applicable as against the sureties on the bond to the jail limits. This is also the rule of the federal courts"—citing Servis v. Marsh, 38 F. 794, 796, C.C.Ill. In the Grosslight Case the judgment debtor was at large under bond within the jail limits of Wayne county, Mich., on a capias issued out of the state court. He went to Macomb county to answer a criminal complaint there made against him. The court held that under the circumstances it did not appear that the defendant went out of the county voluntarily.

The court below considered the present situation anomalous, and not controlled by the Grosslight Case, for Abbott, while confined to the jail limits of Berrien county and theoretically in custody of his surety upon a jail limits bond given to obtain his release from confinement under capias ad satisfaciendum issued by it, was ordered by the mandate of the same court to appear therein at a place beyond the jail limits to show cause why he should not be punished for contempt. The records of the court disclose that at the hearing Abbott unsuccessfully attempted to purge himself but was adjudged guilty and punished by the imposition of a fine with an alternative of confinement in the county jail of Kent county until its payment or the further order of the court. No case had been found where liability had been imposed upon the surety for an escape when the presence of the prisoner was commanded in a contempt proceeding before the same court which had issued the process resulting in his original confinement. It was its opinion that the surety could not be said to have voluntarily permitted the escape of his prisoner under the rule as stated in the Grosslight Case and in Servis v. Marsh, supra, and that to hold the surety liable for an escape where the jail · limits were violated pursuant to the mandate of the court under the direction of which the prisoner was being held would be contrary to fundamental principles of justice.

While there is persuasiveness in the court's reasoning, the mandate of the federal statute to follow state law in such cases is clear, and it is equally clear that the Michigan courts apply the local statutes in strict literalness. The circumstances, of course, invite, if they do not compel, a search for exceptions to what may well be considered an archaic rule governing imprisonment for debt and the consequences of an escape, for Abbott was confronted by a choice between two obligations, each imperative, one growing out of his covenant to remain within the jail limits and the other arising from the command for his presence by the very court which had committed him. For default in the one case his bond might be forfeited, in the other a warrant might issue and jail sentence follow, for he was still within the district and within the jurisdiction of the court, and perhaps this also suggests an inquiry as to the extent to which State laws, even when adopted by the Congress, may obstruct or hinder process issuing out of the courts of the United States to persons within their jurisdiction or excuse defiance of such process. But for reasons presently to appear, we do not make either inquiry.

The difficulty of accommodating the federal judicial process to state law was early recognized in respect to service by the United States marshal of body executions against debtors. This difficulty was said to arise out of the fact that the jails in which prisoners were to be confined did not belong to the government and the privilege of us-

ing them was ceded by the several states under a compact with it. The jailers were, however, state officers, and received prisoners committed by the courts of the United States in obedience to state law and the resolution of Congress which made it expressly the duty of the keepers of jails to receive and safely keep therein all prisoners under the authority of the United States until they should be discharged in due course of law. Wayman v. Southard, 10 Wheat. 1, 37, 6 L.Ed. 253. There it was said that the separate provisions as to jail limits in the Act of January 6, 1800 (from which Rev.St. § 992, tit. 28, § 845, U.S.C., 28 U.S.C.A. § 845, is derived), was merely a cumulative act of legislation with a view to remove doubt that might have arisen from the fact that the jails did not belong to the United States. United States v. Knight, 14 Pet. 301, 316, 10 L.Ed. 465.

The present action is based upon the assumption that Abbott's escape was from the custody of the United States marshal. While the bond ran to the sheriff and marshal jointly, the suit is against the marshal alone. The state statute, however, does not in express terms create obligation to a judgment creditor on the part of the marshal who serves the body execution. In order to read such obligation into the local law, it is necessary to substitute for the word "Sheriff" the word "Marshal" wherever the former term appears in the act. But, if the statute is to be reworded so that it may be accommodated to process issuing out of the United States court and served by a federal officer, there is no reason why the accommodation should not be complete and the term "District" substituted for the term "County" wherever it appears, for the authority of the marshal extends throughout the federal district and complete harmony with federal organization would make the jail limits coextensive with the judicial district rather than with the county. If so, the statute being read into the bond, there was, of course, no escape. But this is not the construction to be placed on the state statute in the light of section 991, Rev.St., 28 U.S.C.A. § 844. There is in that section no such flexibility as is provided by the "as near as may be" phrase of the Conformity Act, Rev.St. § 914, 28 U.S.C.A. § 724, and it seems clear that in respect to jail limits the state law is to be precisely applied. United States v. Knight, supra. If so in this respect we see no reason why it should be reworded in its other provisions.

The keepers of state jails, though having custody of federal prisoners under process of the United States, are not the deputies of the marshals, and the latter are not liable for escapes by the negligence or malfeasance of the former. Randolph v. Donaldson, 9 Cranch 76, 84, 85, 3 L.Ed. 662. The jailer is not appointed by nor removable at the will of the marshal. When a prisoner is regularly committed to a state jail he is no longer in the custody of the marshal nor controllable by him. In the cited case it was held that the marshal is not liable for a prisoner's escape when the latter is confined to jail. By the same reasoning he is not liable for escape when the prisoner is given the privilege of the jail limits. It is argued that the statutes of Michigan which authorize the keepers of county jails to receive and detain prisoners held by officers of the United States apply only to prisoners who are being kept in jail, but the enlargement on jail limits bond is from the custody of the sheriff and not from the custody of the marshal. It is also said that there is nothing in federal or local law to indicate that sheriffs shall have authority or responsibility for going forward with the execution and collection of the judgment of a United States court, and, if the marshals are relieved of responsibility after transfer of custody to the sheriffs, the orderly administration of judicial process is destroyed. But this is beside the point. The state law permits a judgment debtor to be given the liberty of the jail limits under bond. The federal law extends the privilege to those confined under federal process by adopting not only the provisions of state law but also its machinery. It follows that the consequences of an escape from the jail limits are identical whether the debtor has been placed in the custody of the sheriff under either state or federal process. Section 14751, Comp.Laws Mich.1929, defines such consequences: "The sheriff having charge of such jail shall be answerable therefor to such party in an action of trespass on the case to the extent of the damages sustained by him."

Section 14752 is to the same effect: "If any prisoner committed to any jail, in execution in a civil action, * * * shall go or be at large without the jail limits of the county in which he shall have been imprisoned, * * * the same shall be deemed an escape of such prisoner, and the sheriff having charge of such jail shall be answerable therefor."

We find nothing either in the state or federal statutes which imposes a like obligation upon the marshal.

The judgment below is affirmed.