## HASTINGS v. OSBORNE.

No. 9259.

Circuit Court of Appeals, Sixth Circuit.

Dec. 1, 1942.

John M. Dunham and L. K. Varnum, both of Grand Rapids, Mich. (John M. Dunham, L. K. Varnum, and Arthur R. Sherk, all of Grand Rapids, Mich., on the brief), for appellant.

Dean S. Face, of Grand Rapids, Mich., for appellee.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

SIMONS, Circuit Judge.

This cause is a sequel to Optner v. Bolger, 6 Cir., 95 F.2d 241, and the problem here, as there, is one of first impression.

Optner, as a trustee in bankruptcy for an Illinois corporation, recovered a judgment in the District Court against Charles S. Abbott, for fraud and deceit. He sued out a body execution under which Abbott was taken into custody by the United States marshal and lodged in the jail of Berrien County, Michigan, in the custody of the sheriff. Subsequently, Abbott furnished a jail limits bond under the provisions of § 14729 C.L. of 1929, and was allowed the freedom of the jail limits which are co-extensive with the limits of the county. Later, in response to an order to show cause from the District Judge, Abbott left the jail limits, and while absent Optner brought suit against the marshal as for an escape. We held that while, upon the authority of Smith, Sturgeon & Co. v. Grosslight, 123 Mich. 87, 81 N.W. 975, nothing but an act of God or the enemies of the country would excuse the sheriff for an escape, nevertheless, neither the statutes of Michigan nor the Federal law imposes any obligation upon the marshal, the sheriff not being the deputy or the agent of the mar-

shal. Our decision was announced March 11, 1938.

Subsequently, on February 15, 1940, Optner assigned the judgment to the appellee, a Chicago lawyer. Upon discovery that Abbott was in Chicago, and so without the jail limits, and before his return to Berrien County, the appellee, upon April 26, 1941, began the present suit against the successor sheriff, Hastings, in the United States District Court, not on the jail limits bond but, as in the former suit, against the sheriff. Judgment followed and the sheriff appealed.

We are met at the outset of the case with a motion to dismiss the appeal on the ground that prior to it being lodged the sheriff had filed suit against the surety on the jail limits bond, as permitted by the applicable Michigan statutes, and had set forth in his bill of complaint, the judgment rendered against him in the court below, praying judgment against the surety for the amount of the present judgment with interest, costs, and expenses of litigation. It is said that by this action the sheriff confirmed and ratified the judgment here assailed, thereby waiving his right to appeal therefrom, and so is now estopped from so doing.

Undoubtedly there is authority, although the rule is not uniform in the various jurisdictions, that one who voluntarily acquiesces in the validity of a judgment or accepts benefits therefrom, thereby waives his right to have the judgment reviewed on appeal. Such cases are typified by Madden v. Madden, 169 Ky. 367, 183 S.W. 931, L.R.A.1916E, 892. In other cases it has been held that pleading a judgment in bar to another suit admits but the existence of the judgment and not its validity. Fidelity & Deposit Co. v. Brown, 91 Fla. 47, 107 So. 182. No Michigan cases bearing upon the subject have been uncovered, either by the diligence of counsel or our own.

Whatever may be the prevailing rule in this respect we are not persuaded that the present appeal comes within its ambit. The sheriff has as yet received no benefit from the challenged judgment and it will be of no avail to him unless it be here sustained, and then only for the purpose of protecting himself from liability by setting off against it the obligation of the surety upon the jail limits bond. His status here is not inconsistent with that in his suit against the surety. He has

been pressed for payment of the judgment. Except as it has been stayed pending appeal, by order of the court below, execution might have issued against him. The Michigan statutes permit him to recover on the jail limits bond, and to plead the judgment. If this appeal succeeds his suit against the surety must fail. If it fails he may still pursue his alternative action. His remedy there is dependent upon his success or failure here, but the two proceedings are not repugnant, each to the other, calling for an election and the hazard of making the wrong choice. The motion to dismiss must be denied.

The judgment below is assailed by the sheriff on numerous grounds, including an alleged surrender of Abbott to his predecessor exonerating him from liability for an escape, the non-assignability of the judgment to the appellee, the want of liability for an escape on the part of a sheriff who had no custody of the debtor, the invalidity of the jail limits bond, the champertous character of the assignment, and estoppel, grounded upon failure to deny the validity of the alleged surrender. But one of these defenses gives us difficulty. As for the rest we may well agree with the conclusions of the District Judge without extended discussion.

The claim of the trustee for fraud and deceit, having been reduced to judgment, was, in our opinion, assignable, and cases dealing with the survival of tort actions prior to judgment are not in point. Nor are we concerned with the validity of the jail limits bond, attacked on the ground that it was in a penal sum exceeding the maximum permitted by statute. The present suit is not upon the jail limits bond but against the sheriff. If the sheriff accepted a void bond we assume, without deciding, that he had no right to release the judgment debtor from the jail, and would be liable for an escape. The assignment was not champertous in view of the failure of proof that the appellee had bought the claim solely with the intent to prosecute it for the purpose of profit (Tidey v. Kent Circuit Judge, 179 Mich. 580, 146 N.W. 224), and though taken by an attorney-at-law was not shown to have been by him solicited or obtained for purpose of litigation. Royal Oak Drain Dist., Oakland County, Mich., v. Keefe, 6 Cir., 87 F.2d 786; Chicago Bank of Commerce v. McPherson, 6 Cir., 62 F.2d 393. Estoppel was not pleaded, and while effort was made to amend the pleadings at the close of the trial to conform to the proofs, amendment was not permitted by the District Judge. The overruling of the motion to amend was within his sound discretion, and we are not able to say that it was abused. In any event, the court held that the evidence failed to disclose that any action or inaction of the plaintiff or his assignor, misled the defendant to his detriment, and in this we agree.

The defense of surrender is, as urged by the appellant, the controlling question in the case, and the only defense that requires extended discussion. It also necessitates added factual narration. On or about January 29, 1936, while the case against the marshal was pending, Abbott, the judgment debtor, who had been released to the jail limits, appeared at the county jail and surrendered himself to Miller, the predecessor sheriff. Miller placed Abbott in custody and conferred with the marshal as to payment for Abbott's board. The marshal telephoned Optner's attorney of record, and asked him whether Optner, the judgment creditor, would pay Abbott's board in jail. Optner's attorney refused to agree to this and confirmed that refusal by letter. The marshal thereupon informed the sheriff of this refusal, and in consequence thereof Abbott was released. Abbott was not surrendered by his surety nor in the presence of his surety. There was no written request to the jailer that he take Abbott into custody, and the fact of surrender was not indorsed on the bond.

Section 14734, Michigan Compiled Laws, 1929, provides: "The sureties in any bond given for the liberties of any jail, may surrender their principal at any time before judgment shall be rendered against them on such bond; but such bail shall not be exonerated thereby from any liability incurred before the making of such surrender."

Section 14735, Michigan Compiled Laws, 1929, provides: "Such surrender may be made as follows: The bail may take their principal to the keeper of the jail, and upon the written requirement of such bail, the keeper shall take such principal into his custody, and thereupon indorse upon the bond given for the limits, an acknowledgment of the surrender of such principal; and such keeper shall also, if required, give the bail a certificate acknowledging such surrender."

Section 14756, Michigan Compiled Laws, 1929, provides that whenever any person is

committed to jail in default of bail in a civil action, the plaintiff or defendant at whose instance he is in prison, shall pay to the sheriff, on demand, the expenses of board and keeping, and the sheriff shall not be required to retain such person in jail longer than the period for which such expenses of board had been paid in advance. It follows from the last section and the findings of the court that the judgment creditor refused to pay for Abbott's board, that if the surrender was valid the sheriff was not obliged to retain Abbott in custody, and his release imposes no liability on the sheriff for an escape. Prior v. Bodrie, 49 Mich. 200, 13 N.W. 515; Butcher v. Lovitt, 280 Mich. 369, 273 N. W. 734. The present suit is based not upon the first, but upon the later escape.

It is urged, however, and the court so found, that § 14734 provides an exclusive method by which a debtor, taken into custody upon a capias ad satisfaciendum, may be surrendered in exoneration of bail, and that § 14735 makes imperative a written request to the keeper of the jail, an indorsement upon the bond given for the limits, and an acknowledgment of the surrender of the principal. No Michigan case holds this method of surrender exclusive, nor is there any holding to the contrary. There is adjudication that when the surety surrenders his principal he must follow the requirements of the statutes. Elliott v. Dudley, 8 Mich. 62; Begole v. Stimson, 39 Mich. 288.

It will be observed, however, that §§ 14734 and 14735 are in terms permissive and govern expressly only the right of a surety on a jail limits bond to surrender his principal. A voluntary surrender by the principal with or without the consent of the surety is not thereby touched. If the view be sound that these sections provide an exclusive method of surrender, then it follows that under no circumstances may the principal submit himself to custody against the wishes or without the cooperation of the surety, no matter how important it may seem to him to avoid the payment of additional premiums or to procure the release of collateral pledged with the surety by family or friends. Such harsh result is not lightly to be attributed to the legislature as within its intent.

In considering the steps required to be taken when a surety surrenders his principal, it would seem that they are mainly, at least, designed for the protection of the surety. He may surrender his principal, whether the principal consents or not, and in the event of being charged with liability on the jail limits bond he may prove surrender by record evidence thereof. Like safeguards are not needed for the protection of the judgment creditor, assuming he has notice of the surrender as, in this case, he had. Upon surrender of the principal, voluntarily or by his bail, the judgment creditor is restored to the position he occupied prior to the giving of the jail limits bond. By paying the debtor's board the latter remains subject to the body execution and may be released only by payment of the judgment, the taking, if he may, of a poor debtor's oath, or perhaps by the passage of time. If the requirements of the statute are, as they seem to be, for the protection of the surety on the jail limits bond, they are of no service to the judgment creditor here, because his suit is not on the jail limits bond but against the sheriff, with judgment recoverable against the sheriff's surety, on his official bond. Under the Michigan statute the creditor might have secured an assignment of the jail limits bond from the sheriff and in right of subrogation have sued the surety thereon for a breach of its condition, but he has not chosen to do so.

Assuming that §§ 14734 and 14735 are not exclusive and do not control the voluntary surrender of a judgment debtor enlarged upon a jail limits bond, we come to a consideration of the rules and practices of the common law governing such voluntary surrender, and here we are greatly indebted to the research of Hammond, J., in United States v. Stevens, C.C.W.D. Tenn., 16 F. 101, 108. In tracing the practice under the common law and earlier English statutes, he points to the strict requirements in an earlier day of a record of surrender whether by the principal himself or by his bail. He then calls attention to departures from the harshness of the early practice in the development of the English common law and cites an observation of Lord Bacon in respect to bail in civil actions: "If the principal surrenders himself or the bail render him up, this will discharge the bail * * *; but such surrender or render are not sufficient unless the plaintiff or his attorney have notice of it. * * * So, where the principal surrendered himself before the return of the capias, yet the plaintiff having had no notice, and there being no discharge of the bailpiece or exoneratur entered, and the

plaintiff having proceeded to judgment against the bail, the court would not relieve them on motion. * * * But if through want of notice he is at further charge against the bail, that shall not vitiate the surrender, but yet the bail shall not be delivered till they pay such charges." The same principle of leniency is observed in § 1020 of the United States Revised Statutes, 18 U.S.C.A. § 601, and likewise in the Code of Tennessee, § 5180, in the cited case involved. While United States v. Stevens, supra, was a case involving the surrender by the surety of one charged with crime, it would seem that the rules governing imprisonment under civil process should not be more harshly or strictly construed.

That the Michigan court has shown a tendency to relaxation of the strict rules of the common law or the requirements of the state statute, is indicated by Mc-Neal v. Van Duser, 142 Mich. 593, 105 N. W. 1109. In Jones v. Varney, 8 Cush., Mass., 137, it was held, under a similar statute, that where discharge followed automatically on surrender, a failure to have the surrender indorsed on the bond is not fatal. In Barb v. Oakley, 5 Cal. 93, a surrender under somewhat similar circumstances as appear here, was upheld. In People v. Mahoney, Sup., 89 N.Y.S. 424, the court declined to hold a statute governing surrender by a surety exclusive, even though the language was mandatory rather than permissive.

We suggested in our opinion in Optner v. Bolger, supra, that the circumstances there considered invited, if they did not compel, a search for exceptions to an archaic rule governing imprisonment for debt and the consequences of an escape. Perhaps in this case we have found the invitation even more alluring, for it appears that since judgment in the earlier case Abbott for years has been out of Berrien County, has practiced law in Ann Arbor and in Detroit, has presented himself for various purposes before judges of this court in Detroit, Cincinnati and Louisville, and has been generally regarded as a nonresident of Berrien county. It also appears that the sheriff subjected to the judgment, never had custody of Abbott, knew nothing of the case, and was never in possession of the jail limits bond. Finally, it is also clear that the assignee of the judgment must have known, for they were matters of public record, of each of the defenses here and in the Optner case, as-

serted. The legal effect of these circumstances we do not consider, for we reach decision solely upon the view that the statute does not provide an exclusive method of surrender, that there is no Michigan authority that so holds, and that under the common law a voluntary surrender by the principal is effective where the plaintiff has notice of it as, in this case, he had.

The judgment is reversed.