GEORGE W. MORLEY v. THE LIVERPOOL AND LONDON & GLOBE INSURANCE COMPANY.

*Fire insurance—Pleading—Fraud—Forfeiture—Waiver—Verdict.*

1. While, under Circuit Court Rule No. 104, the declaration need not set forth the insurance policy declared upon *in hœc verba*, or according to its legal effect, the rule of evidence is unchanged, and proofs must be made in the same way as if the policy had been fully set forth.

2. Under the plea of the general issue to a declaration upon a written contract, the defendant may show, upon the cross-examination of plaintiff's witnesses or otherwise, a non-compliance with any of the conditions of the contract counted upon which will defeat recovery.

3. The trial judge is under no obligation to charge the jury until both parties have rested, and announced the testimony as closed. The defendant may, if he chooses, rest upon the plaintiff's showing; but until he has so announced to the court,

he is not in a position to insist legally upon instruction to the jury.[1]

4. Where the holder of an insurance policy, after revoking an agreement for arbitration, submits proofs of loss, in which he adopts, item by item, the appraisal made by the arbitrators before such revocation, and which contains every article of goods, and the amount of the damage thereto, such appraisal is binding upon him in a suit upon the policy.

5. It is error for the court to instruct the jury that proof of fraud should be of such a character as to be inconsistent with any other view than that the accused party is guilty of the fraud charged.

6. The illegal action of a jury in ignoring the charge of the court and the evidence in the case, and agreeing upon a compromise verdict outside of the evidence, should be promptly rebuked by the trial court by setting aside the verdict.

7. An insurance policy providing that, in case of the non-agreement of the parties, the amount of sound value, and of the loss or damage, should be determined by arbitration, and that until an award was made the assured should have no right of action upon the policy, which also provided that the company might take the whole or any part of the property at its appraised value. A fire occurred, and the parties entered into an arbitration agreement, which provided that the appraisers were not

[1] See the following cases, in which the question of the right to direct a verdict is discussed:

*Williams v. City of Grand Rapids*, 59 Mich. 51; *Sheldon v. Flint & Pere Marquette R. R. Co.*, Id. 172; *Hood v. Judkins*, 61 Id. 576; *Dondero v. Frumveller*, Id. 440; *Stockham v. Cheney*, 62 Id. 10; *Potter v. Flint & Pere Marquette R. R. Co.*, Id. 22; *People v. Wakely*, Id. 297; *Hoar v. Merritt*, Id. 386; *Novock v. Mich. Cent. R. R. Co.*, 63 Id. 121; *Bethel v. Linn*, Id. 464; *Wiltse v. State Road Bridge Co.*, Id. 639; *Gibbons v. Farwell*, Id. 344; *Mynning v. Detroit, Lansing & Northern R. R. Co.*, 64 Id. 93; *Goulin v. Canada Southern Bridge Co.*, Id. 190; *Ecliff v. Wabash, St. Louis & Pac. Ry. Co.*, Id. 196; *Strand v. Chicago & West Mich. Ry. Co.*, Id. 216; *Harris v. Township of Clinton*, Id. 447; *Hunt v. Supreme Council*, Id. 671; *Wessels v. Beeman*, 66 Id. 343; *Gould v. Sanders*, 69 Id. 5; *Alexander v. City of Big Rapids*, 70 Id. 224; *Kwiotkowski v. Grand Trunk Ry. Co.*, Id. 549; *American Eagle Tobacco Co. v. Peirce*, Id. 633; *Flater v. Fey*, Id. 644; *Thomas v. Corey*, 74 Id. 216; *Smith v. Dunham*, Id. 310; *Alford v. Metcalf Bros.*, Id. 369; *Aldine Press v. Estes*, 75 Id. 100; *Densmore v. Hinchman*, 76 Id. 335; *Karrer v. Detroit, Grand Haven & Milwaukee Ry. Co.*, Id. 400; *Karp v. Citizens' National Bank*, Id. 679; *Fisher v. Chicago & Grand Trunk Ry. Co.*, 77 Id. 546; *Field v. Clippert*, 78 Id. 26; *McIntosh v. McIntosh*, 79 Id. 198; *People v. Ackerman*, 80 Id. 588; *Bergstrom v. Staples*, 82 Id. 654; *Luttenton v. Fritz*, 83 Id. 145; *People v. Newmann*, 85 Id. 98; *People v. Collison*, Id. 105; *Stevens v. Pendleton*, Id. 137.

to take into account or to consider the question of merchandise totally consumed. The arbitrators agreed upon the value of the goods before the fire and the amount of damage, but before they had both signed the award the assured served a notice of revocation upon the company, after which he submitted to an examination under oath on the demand of the company, as provided for in the policy, made about two months after the revocation. After this, and some five months after such revocation, the assured made an offer in writing to submit the question of loss and damage to arbitration pursuant to the terms and conditions of the policy, he having before that time disposed of the goods, which offer was declined by the company, and thereupon the *assignee* of the policy brought suit thereon. And it is held:

*a*—That the assured and the company, by the agreement to arbitrate the damage to the goods which could be identified, ·had waived any other arbitration and award provided for by the policy.

*b*—That by his revocation of said agreement the assured lost his right to sue upon the policy, which could only be regained by a seasonable offer to submit the amount of damages to arbitration.

*c*—That the offer to submit to such arbitration came too late, he having disposed of the goods, thereby depriving the company of the valuable right provided by the policy to take them at the appraisal.

*d*—That the silence of the adjuster of the company at the time did not constitute an acquiescence in the revocation, and that after such revocation the company was not called upon to speak or act until some affirmative action was taken by the assured. *Lumber Co. v. Insurance Co.*, 80 Mich. 116.

*e*—That the conduct of the company in subjecting the assured to the additional expense of an examination under oath was entirely inconsistent with the idea that it insisted upon said forfeiture. *Marthinson v. Insurance Co.*, 64 Mich. 372, 383.

Error to Saginaw. (Edget, J.) Argued February 13, 1891. Decided April 17, 1891.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Wisner & Draper* (*L. D. Norris* and *Benton Hanchett,* of counsel), for appellant.

*W. G. Gage* (*L. C. Holden*, of counsel), for plaintiff.

GRANT, J. Plaintiff's assignor, Joseph M. Lenhoff, was engaged in the clothing business in East Saginaw in February, 1887. His stock was insured to the amount of $13,000 in seven companies, of which the defendant was one, having a policy of $2,000. A fire occurred in the store February 20, resulting in a total destruction of part of the stock, and damage to the rest. Among the provisions of this policy are the following:

"All fraud or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claims on this company under this policy."

"When property is damaged, the assured shall forthwith cause it to be put in order, assorting and arranging the various articles according to their kinds, separating the damaged from the undamaged, and shall cause an inventory to be made and furnished to the company of the whole, naming the quantity, quality, and cost of each article. The amount of sound value, and of the loss or damage, shall be determined by agreement between the company and the assured; but if at any time differences shall arise as to the amount of any loss or damage, or as to any question, matter, or thing concerning or arising out of this insurance, every such difference shall, at the written request of either party, be submitted, at equal expense of the parties, to competent and impartial persons, one to be chosen by each party, and the two so chosen shall select an umpire to act with them in case of their disagreement; and the award, in writing, of any two of them shall be binding and conclusive as to the amount of such loss or damage, or as to any question, matter, or thing so submitted, but shall not decide the liability of this company; and until such proofs, declarations, and certificates are produced, and examinations and appraisals permitted, the loss shall not be payable. There can be no abandonment to the company of the property insured, but the company reserve the right to take the whole or any part thereof, at its appraised value; and provided, further, that it shall be optional with the company to repair, rebuild, replace, or restore the property lost or damaged within a reasonable time, giving notice

of their intention so to do within thirty days after the receipt of the proofs herein required."

"The assured shall, if required, submit to an examination or examinations under oath by any person appointed by the company."

"It is furthermore hereby expressly provided and mutually agreed that no suit or action against this company for the recovery of any claim by virtue of this policy shall be sustainable in any court of law or chancery until after an award shall have been obtained fixing the amount of such claim in the manner above provided."

Two days after the fire the adjusters for the several companies met to investigate the loss. Being unable to agree, the adjusters made an oral request for arbitration. To this Lenhoff assented, and March 8 an agreement for submission was duly executed by him and the companies interested. The parties agreed upon were Carl Heavenrich and Fred Osborn, with one James C. Mercer as umpire in case of their disagreement. This agreement had the following clause:

"It is understood and agreed that the appraisers are not to take into account or to consider the question of merchandise totally consumed."

On the same day the appraisers accepted and qualified by taking the proper oath. They completed their work on the 10th, and agreed without any intervention of the umpire. The award was written out and ready for signatures on March 10. Mr. Osborn signed the award; Mr. Heavenrich, under the direction of Lenhoff, refused to sign. They found the value of the goods before the fire to be $5,890.88, and the damage to be $4,858.11. This did not include the goods totally destroyed. On the same day plaintiff's assignor, under the advice of his counsel, revoked the arbitration in writing, in which he said to the defendant and the other insurance companies:

"I have elected, and do hereby elect, to cancel, annul,

and revoke the same, and I decline to proceed with or be bound thereby."

The reason for this revocation as given by his attorney upon the trial was that the agreement for arbitration did not embrace the whole controversy, but involved only the damage to the goods injured, and not the damage resulting from those totally destroyed. No such reason, however, was given to the defendant, and no request was then made by Lenhoff for any such submission.

March 17 Lenhoff submitted his proofs of loss to the defendant. April 2 defendant wrote Lenhoff, notifying him that the proofs were insufficient, and not in accordance with the terms of the policy. May 3 Lenhoff submitted his second proofs of loss, duly verified, in which he adopted, item by item, the valuation agreed upon by the arbitrators.

Immediately after serving his notice of revocation upon the companies he procured an appraisal to be made by two men, and proceeded at once to sell the goods, all of which he sold before July 4. May 18 defendant, by letter, notified Lenhoff that he was required to submit to an examination under oath by Mr. C. S. Draper, at his office in East Saginaw, on May 25, touching his loss by fire, and the liability of defendant under its policy. Lenhoff appeared, and submitted to such examination. August 6 Lenhoff wrote defendant as follows:

"LIVERPOOL, LONDON & GLOBE INSURANCE COMPANY,—

"*Gentlemen:* On May 25 last, at your request and that of other companies who had written upon my stock, I submitted to an examination, and produced before the agents and attorneys who conducted the same for the insurance companies such of my books and papers as were called for. At the conclusion of that examination I was informed by your attorney that an early answer would be given me as to the course the several companies proposed to pursue, since which time I have heard nothing from you. For the purpose of arriving at a speedy

settlement of my claim, I hereby offer to submit the question of my loss and damage under your policy number 996 to arbitration, and I request that said arbitration be entered into pursuant to the terms and conditions of said policy. Please favor me with an early reply, and oblige,

"Yours truly,       J. M. LENHOFF."

To this letter defendant replied as follows:

"EAST SAGINAW, MICH., Aug. 17, '87.
"J. M. LENHOFF, Esq.,—

"*Dear Sir:* In reply to your offer to the several insurance companies having policies on your stock of clothing, etc., recently destroyed by fire, to arbitrate the question of liability and amount of loss, etc., we, as attorneys for the companies, inform you that they decline so to do. You having assigned your claims to a trustee, as we are informed, would render an arbitration somewhat uncertain. This, with other reasons not necessary to mention, leads the several companies to the conclusion that the differences between you and them had better be settled in the court of law than otherwise.

"Yours, etc.,       WISNER & DRAPER."

This closed all communication and correspondence between the parties, and thereupon the plaintiff, to whom Lenhoff had assigned the policy April 5, brought this suit. The declaration did not set forth the policy in full, but only its tenor and effect, giving its date and number, and alleging the loss. It made no reference to any of the terms and conditions of the policy above set forth. The plea was the general issue, with notice that Lenhoff had made false statements as to the goods which he claimed were entirely destroyed by the fire, and as to the amount and value thereof, with intent to defraud the defendant, and that said policy was therefore void.

Two appraisals were introduced in evidence,—that of the arbitrators above given, and that of the two persons employed by Lenhoff, who appraised the original value of the goods not totally destroyed at $6,712.13. The jury

found the value of the goods totally destroyed to be $5,110, and the sound value of the goods not totally destroyed to have been $5,890. The lowest damage to the latter under the evidence and charge of the court was $4,858.11. The least total loss, therefore, should have been $9,968.11, of which the defendant's share would have been two-thirteenths, or $1,533, with three years' interest to be added. But the jury found a verdict in favor of the plaintiff for but $951.29,—a verdict inconsistent with their special findings and the evidence.

1. When the plaintiff had rested his case, defendant's counsel moved the court to direct a vertict for the defendant, upon the ground that the suit was permaturely brought under the plaintiff's own showing, no award having been made as provided in the policy. The court denied the motion, and one ground for his ruling appears to have been that no notice of this defense had been attached to the plea. Defendant then asked leave to amend, which the court denied. While the ruling of the court denying the motion was correct for reasons to be hereinafter stated, we think that these specific rulings were erroneous. If any notice had been necessary, the amendment should have been allowed. But the precise point was put in issue by the declaration and the plea, under Circuit Court Rule No. 104. While under this rule the policy need not have been set forth *in hæc verba*, or according to its legal effect, yet the rule of evidence was not changed, and proofs must be made in the same way as if the declaration had set forth the policy in full. When the declaration is upon a written contract, under a plea of the general issue the defendant may show, upon cross-examination of plaintiff's witnesses or otherwise, a non-compliance with any of the conditions of the contract which will defeat recovery.

We are not to be understood as holding that under

such circumstances it is the duty of the trial judge to charge the jury as requested. The trial judge is under no obligation to charge the jury until both parties have rested, and announced the testimony as closed. The defendant may, if he chooses, rest upon the plaintiff's showing. Until he has so announced to the court, he is not in position to legally insist upon instruction to the jury.

2. The judge charged the jury that—

"The company, or its adjusters appeared to have acquiesced in the right of Mr. Lenhoff at that time to revoke this submission. to arbitration."

This was error, but harmless, because, under the author_ities, the company's right to insist upon that as a defense had been waived. Lenhoff and defendant, by this agreement to arbitrate the damage to the goods which could be identified, had waived any other arbitration and award provided for by the policy. By his revocation Lenhoff violated his agreement, and lost his right to sue upon the policy, which could only be regained by a seasonable offer to submit the amount of damages to arbitration. His offer of August 6 came too late. He had disposed of the goods. He had deprived the defendant of the valuable right provided by the policy to take them at the appraisal. The silence of defendant's adjuster at the time did not constitute an acquiescence in the revocation. After that defendant was not called upon to speak or act until some affirmative action was taken by Lenhoff. This is clearly within the principle of *Chippewa Lumber Co. v. Phenix Insurance Co.,* 80 Mich. 116. But more than two months after this revocation defendant demanded of Lenhoff that he submit to an examination under oath. See above letters of May 18 and August 6. By so doing defendant subjected him to additional costs and expense. This conduct was entirely inconsistent with the idea that defend-

ant insisted upon this forfeiture. This is directly within the rule in *Marthinson v. Insurance Co.*, 64 Mich. 372, 383; *Titus v. Insurance Co.*, 81 N. Y. 410, 418.

3. Plaintiff's assignor submitted the second proofs of loss with a full knowledge of the value of the goods which were not totally destroyed. He had the itemized appraisal of the arbitrators. He had also the appraisal of his own *ex parte* appraisers. If there was any mistake or fraud—which upon this record he does not appear to claim—he then knew it. He chose to adopt under his oath the appraisal made by the arbitrators, in which appeared every article of goods, and the amount of the damage thereto. In the absence of fraud or mistake, this was binding upon him, and the circuit court should have so instructed the jury.

4. The court instructed the jury that—

"Proof of fraud should be of such a character as to be inconsistent with any other view than that Mr. Lenhoff was guilty of fraud."

This was error. It was in effect saying to them that defendant must establish fraud beyond a reasonable doubt. It cannot be said that his further instruction that they "should deal with that question precisely as with any other question of fact, viewing it reasonably, weighing it and acting upon it upon the same testimony, and using the same reason in arriving at results, as you do upon any other branch of the case," modified this charge. The court had previously said to the jury:

"The burden of proof is upon the party who alleges fraud to make the same clearly and satisfactorily appear to you."

This was correct, and was as strong a statement of the rule as plaintiff was entitled to. If the charge had stopped with this statement, no error would have been committed.

5. The circuit court charged the jury as follows:

"The only proof in the case as to the value of the goods not totally consumed which remained capable of being appraised is embraced in this appraisal of Osborn and Heavenrich, adopted in the final proofs of loss, or in the appraisal made by Mr. Young and Mr. Bendit. It is for you to pass between the two, and to adopt that which, in view of the history of the case, and the acts of the parties, and the method in which it was made, gives you the best assurance that it represents the true and actual value of those goods thus submitted to appraisal."

Under this charge the only verdict which the jury could render in favor of the plaintiff would have been one for at least $1,533, with three years' interest. The jury evidently ignored the charge of the court and the evidence in the case, and agreed upon a compromise verdict outside the evidence. Such verdicts cannot and ought not to stand. Juries are sworn to decide according to the law and the evidence. Whenever they disregard either or both, courts should promptly set them aside upon the motion of either party, if not upon their own motion. Suitors bring their cases into court to be determined in accordance with the facts and their legal rights. Any other disposition of their cases is contrary to law and justice. Such illegal conduct in jurors should be promptly rebuked by the trial courts by setting aside the verdict.

Judgment is reversed, with the costs of this Court, and a new trial ordered.

CHAMPLIN, C. J., MORSE and McGRATH, JJ., concurred. LONG, J., did not sit.