## LESSNAU *v.* CATHOLIC ORDER OF FORESTERS.

1. INSURANCE — FRAUD — WARRANTIES — FRATERNAL BENEFICIARY SOCIETY.

> Deceased applied for admission to a fraternal beneficiary order, representing that he was a polisher.  In accordance with the rules of the association he underwent a medical examination and stated in a subsequent application that his occupation was drawing dirt and he had no regular employment.  The representations were true at the time.  A committee of defendant having investigated his standing and the truthfulness of his representations, recommended his admission to the society.  In the benefit certificate thereafter issued to the insured, a clause provided that the statements of the first application for membership should be warranties in the contract.  At the time of his death the insured worked as a metal polisher, an occupation prohibited to members of

the order. *Held*, that the preliminary application truly stated the occupation of the insured, and that, after an investigation of the facts, the receipt of dues and premiums during the lifetime of insured estopped the defendant from questioning the validity of the policy on the ground of fraud. HOOKER and BROOKE, JJ., dissenting.

2. SAME—PLEADING—NOTICE OF DEFENSE.

A notice of fraud in procuring the policy of insurance, under a plea of the general issue, relieves the plaintiff of the necessity of showing that due proofs were furnished of the death of insured or that he was a member of the order in good standing at the date of his decease.

3. SAME—PLEADING—AMENDMENT—PRACTICE.

It was not error, in an action that had been pending for more than a year, after the trial of the case had continued for some time and defendant entered upon its defense, for the court to deny an application of defendant to amend its notice of defense by inserting an allegation that deceased had changed his occupation after the issuance of his benefit certificate and had thereby invalidated his policy.

Error to Wayne; Murfin, J. Submitted January 13, 1910. (Docket No. 70.) Decided November 11, 1910.

Assumpsit by Mary Lessnau against the Catholic Order of Foresters on a policy of insurance. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Thomas W. Thompson* (*Devine & Snyder*, of counsel), for appellant.

*Dohany & Dohany*, for appellee.

Defendant's appeal is from a directed verdict and consequent judgment upon a mutual benefit policy. The defendant order—*i. e.*, the supreme court—has its office in Chicago; local subordinate courts being established in many places. All policies are issued under established by-laws, and these provide that one desiring to join a local court and obtain a policy of insurance, which only issues from the supreme court, must proceed as follows:

(1) He must be proposed for membership in a prescribed manner and form, and in the proper local court. In connection with such proposal he must state over his signature many prescribed things. His proposal must be indorsed by two members of the order in good standing. If upon presentation and reading "any such proposal" it is found that all statements subscribed by him indicate his eligibility to membership—the passing of the medical examination being excepted—the proposal shall be referred to an investigation committee of three members, who shall investigate the truth of his statements, and other matters in relation to his eligibility and desirability as a member, and, upon a favorable report, he may be admitted to membership by vote of the local court, subject to the action of the supreme court.

(2) After election he must appear before the medical examiner for the "purpose of making a formal application for membership, and undergoing a medical examination."

(3) In this formal application for regular membership the applicant shall, over his full signature, state the amount of benefits that he desires to carry, the name of the beneficiary, and many other things, including "the nature and name of his business or occupation," and that he agrees, if any of the statements or any of the answers made to the medical examiner's questions are found to be fraudulent, to forfeit on behalf of himself and his beneficiaries "all rights in and all moneys paid by him into the order."

(4) Every "formal application for regular membership, together with the records of the applicant's medical examination, shall, without delay, be forwarded to the high medical examiner, by the medical examiner," for approval by him, etc.

(5) Persons engaged in any of the following occupations shall not be eligible to regular membership. (Here follows a long list of occupations, including "professional metal or tool polisher.")

(6) Any member of the order who changes his occupation from either the "ordinary or hazardous" class to the "prohibited class shall by that fact lose his membership."

These provisions are found in the by-laws, and deceased's standing at the time of his death must be tested by them.

The proposal for membership was in writing signed by two persons, presumably members of the order. Appended to it was a blank containing questions only partially filled by answers, and signed by the deceased. It was not dated, but it is apparently conceded to have been presented to the local court in November, 1905. It stated deceased's occupation as that of a "polisher." Presumably the regular course was taken by the local court. The formal application for membership was dated January 21, 1906. In it deceased stated:

"My occupation is that of driver of dirt wagon, and my place of business is at No. 730 Hancock street. * * * I do hereby certify and declare that the statements by me made above are each and all true in fact, and I do hereby warrant said statements and each one of them to be true in fact, and I do hereby agree that, should any statement so made by me be untrue in fact, * * * or should any concealment of facts be made by me in this application, that then and in such case I do thereby forfeit the rights of myself and of my beneficiary or beneficiaries, and of any and all other persons whomsoever to any and all benefits and privileges of the order, including all claims and demands by virtue of any benefit certificate that may have been issued to me by said order, and including also all moneys paid by me to said order for any purpose whatsoever."

It was duly signed by him, and in the remarks appended thereto by the medical examiner such officer said:

"Applicant has no particular employer; takes jobs of hauling dirt, etc.; owns team and wagon."

A certificate of approval by the high medical examiner was made and sent to the high secretary immediately after initiation and was received on February 16, 1906.

The policy was dated and delivered February 13th, which appears to have been the date of the initiation. It contained the following provisions:

"(1) The statements made by said member in the proposition blank, signed by him at the time of his proposal as a member of said Catholic Order of Foresters, are hereby

acknowledged and declared by him to be the warranties and to be made a part of this contract.

" (2) The representations and agreements made and subscribed by him in the application and medical examiner's blanks and the answers given and certified by him to the medical examiner are hereby acknowledged and declared by him to be warranties and to be made a part of this contract.

" (3) The person to whom this certificate is issued shall at the time of his death be a member in good standing of the Catholic Order of Foresters, and shall have complied with all the laws, rules, regulations, and provisions of the constitution and by-laws of the Catholic Order of Foresters and said court at the time of the death of said person.

" (4) The constitution and by-laws governing the Catholic Order of Foresters and the said court at the time of the initiation into the said court of the person to whom this certificate is issued and all amendments, additions, alterations that may be made thereto at any time during the continuance of this certificate at any time prior to the death of said person are declared to be a part of this contract."

After the death of the member, his widow, the plaintiff, began this action, filing a declaration as commencement of suit. The defendant pleaded the "general issue" accompanying the same by a notice alleging:

"(2) That the statements contained in said application were made by Joseph Lessnau for the purpose of securing membership in the benefit fund of the Catholic Order of Foresters.

"(3) That Joseph Lessnau made the statements contained in said application, understanding that defendant relied upon the truth of the same, in considering his application for membership. That the statements of fact contained in said application were in fact warranties upon the truth of which defendant relied in passing upon said 'application.

"(4) That the statements in said application were not true, but were untrue and false, in the following respects: In said application signed by him Joseph Lessnau stated his occupation to be that of ' dirt wagon driver,' the owner of a team and wagon, and had no regular employer. In reality, at the time of signing said application Joseph Lessnau was earning his livelihood as a professional metal

or tool polisher. That he followed this calling uninterruptedly during the time of his alleged connection with the Catholic Order of Foresters until his death.

"(5) That, if defendant ever entered into the contract or issued the policy of insurance set forth in plaintiff's declaration, said certificate of insurance was issued only pursuant with and upon the conditions named in the constitution and laws, rules, and regulations of said defendant.

"(6) That the constitution, laws, rules, and regulations of the Catholic Order of Foresters did not provide for the issuing of a certificate to any applying for the same, who was engaged in the trade or occupation of a professional metal or tool polisher. That persons engaged in the work or occupation of professional metal or tool polishers were not eligible to membership in said organization.

"(7) That Joseph Lessnau, knowing this provision in the constitution, laws, rules, and regulations of said defendant, fraudulently represented himself in his application for membership as a driver of a dirt wagon, when, in fact, his occupation was that of a professional metal or tool polisher.

"(8) That Joseph Lessnau was not, according to the constitution, laws, rules, and regulations of the order, eligible for membership in the Catholic Order of Foresters.

"(9) That, if the benefit certificate or policy of insurance relied on in plaintiff's declaration was ever issued by defendant, it was procured by the false and fraudulent representations of Joseph Lessnau.

"(10) That Joseph Lessnau (husband of plaintiff) never was a member of the Catholic Order of Foresters, nor entitled to participate in its benefit fund."

A verdict was directed for the plaintiff.

HOOKER, J. (*after stating the facts*). There is testimony in this case from which the jury might have found, had they been given the opportunity, that, while in his answer to the question accompanying the proposal of his name for membership the deceased stated that he was a "polisher" (which was not necessarily within the term "metal polisher"), he was in fact at that time engaged in the occupation of a "professional metal polisher," a prohibited occupation. Some two months later, when he

made his formal application, he stated that his occupation was that of "driver of a dirt wagon." There is possibly some testimony, not hearsay, tending to show that at that particular time he drove a dirt wagon for a few days, but it is not very convincing, and, taken in connection with the fact—not disputed, we understand—that a few days later he was engaged in, and continued to follow, his occupation of polishing brass to the time of his death, the jury, had they been permitted, might have found his formal application fraudulent. They should not have been deprived of this opportunity unless there was some valid legal reason for saying that, in spite of the existence of such fraud, plaintiff was entitled to a verdict.

We understand that the learned circuit judge took the view that the required investigation by the local court's committee should have and did put that court in possession of the fact that the deceased was a metal polisher at the time they were called to investigate the proposal for membership, and that, although he later in his formal application misrepresented his occupation, the defendant is estopped and cannot be permitted to deny its liability by reason of the knowledge of the local lodge, and the assumption that it knew of the fact that deceased had stated in the proposal for membership that he was a "metal polisher." It does not appear that the local court ever knew that deceased was a metal polisher. His first statement was that he was a "polisher," and many kinds of polishing were not prohibited. There is no syllable of proof that the committee ever ascertained that he was a metal polisher. Even if they attempted to ascertain a fact to which there was nothing in the proposal to especially call their attention, he may have falsified about it, as he is said to have done in his second application. Nothing goes to show any further knowledge than the contents of the preliminary application afforded upon the part of the local court, or that the proposal was ever returned to the superior body. Again, conceding that deceased's occupation as a metal polisher was known by it,

the defendant had a right to suppose that, if the deceased had ever followed the prohibited occupation, he had abandoned it, and engaged in an ordinary calling not precluding his admission.

But further than all this, if the deceased's statement when finally made was untrue, and his alleged occupation at that time a temporary expedient to get admitted to the order, he knew that he was making a fraudulent statement or concealment upon which he expected defendant to rely, and upon which it had a right to rely, and, so far as the knowledge of the local court is concerned, this situation would preclude plaintiff from asserting that defendant was bound by the knowledge and collusion of the members thereof if they can be said either to have been defendant's agent or had the knowledge. The case of *Mudge* v. *Supreme Court I. O. F.*, 149 Mich. 467 (112 N. W. 1130, 119 Am. St. Rep. 686, 14 L. R. A. [N. S.] 279), is a case in point, and many authorities are there referred to. To say the least, there was a question for the jury on this point. Some of the cases cited indicate that the doctrines of estoppel and waiver have been greatly overworked in this class of cases in the enforcement of contracts that have not been made, or the evasion of conditions precluding relief, which have been deliberately made by the contracting parties. The recent case of *Showalter* v. *Modern Woodmen*, 156 Mich. 390 (120 N. W. 994), is an authority upon the questions here discussed. What has been said in the present case is not meant to indicate that any knowledge brought to the local court can constitute an estoppel against defendant on this record.

There is another feature of this case that demands attention. Whatever else appears, it is clear that, if—as the court seems to have properly held—the deceased was a professional metal polisher at the time of his death, his policy was rendered void by the change of occupation, if, as contended by plaintiff's counsel, he was bona fide engaged in another occupation when he made his formal application. We are compelled to say that the learned cir-

cuit judge was right in determining that this defense was
not set up in the plea, and no showing was made which
requires us to hold that the denial of the motion to amend
the notice was erroneous.  At the same time, that was a
meritorious defense, and an amendment might well have
been permitted, and, had it been, we should not have con-
sidered it error.  It could have been permitted on such
terms as would have protected plaintiff, and whether
plaintiff would consent to "withdraw a juror or not."
There is no reason now why defendant should not be per-
mitted to amend the notice, as the judgment should be re-
versed, for the reasons indicated.  There are some other
questions that should be referred to, in view of a possible
new trial.  The defendant by its pleadings was precluded
from questioning the proofs of loss, as shown by the fol-
lowing cases, cited by plaintiff's counsel:  *O'Brien* v. *In-
surance Co.*, 52 Mich. 131 (17 N. W. 726); *Lum* v. *In-
surance Co.*, 104 Mich. 397 (62 N. W. 562); *Douville* v.
*Insurance Co.*, 113 Mich. 158 (71 N. W. 517); *Hoffman*
v. *Hospital Ass'n*, 128 Mich. 323 (87 N. W. 265, 54 L.
R. A. 746); *Hare* v. *Protective Ass'n*, 151 Mich. 225
(114 N. W. 1009); *O'Neill* v. *Assurance Co.*, 155 Mich.
564 (119 N. W. 911).

It was contended by plaintiff's counsel that the proof
did not show that the occupation said to have been fol-
lowed by deceased was that of a "professional metal pol-
isher."  We think it established on this record.  The
judgment should be reversed and a new trial ordered,
with direction to permit defendant to amend its notice in
the particular mentioned.  *Baker* v. *Protective Ass'n*,
118 Mich. 431 (76 N. W. 970); *Browne* v. *Moore*, 32 Mich.
254; *Johnson* v. *Kibbee*, 36 Mich. 269; *Hopkins* v.
*Briggs*, 41 Mich. 175 (2 N. W. 199); *Beecher* v. *Wayne
Circuit Judges*, 70 Mich. 367 (38 N. W. 322); *Morley*
v. *Insurance Co.*, 85 Mich. 217 (48 N. W. 502); *Smith,
Sturgeon & Co.* v. *Grosslight*, 123 Mich. 87 (81 N. W.
975).

BROOKE, J., concurred with HOOKER, J.

MOORE, J.   This is an action brought to recover the sum of $1,000 claimed to be due to the plaintiff by reason of the death of her husband, Joseph Lessnau, under a certificate of insurance issued to him.   The defendant pleaded the general issue and gave notice that it would show in its defense that the constitution, laws, rules, and regulations in force at the time Lessnau made application for membership in the order provided that no person should be eligible for membership in the order who was engaged in the trade or occupation of a professional metal or tool polisher; that Joseph Lessnau, knowing this, fraudulently represented himself in his application for membership to be a driver of a dirt wagon, having no particular employer, whereas, as a matter of fact, he was actually engaged in such prohibited occupation at the time he made application for membership in the defendant society; that by such application he agreed that all statements made by him with reference to his occupation were true, and defendant relied upon the truth of the same in passing upon said application.   In the month of November, 1905, Joseph Lessnau applied for membership in what defendant calls a preliminary application.   In this application the deceased gave his employment as that of a polisher.   After deceased had been investigated by an investigating committee appointed by the local court, and had been duly balloted upon for membership in the local court, he made a second application, which defendant calls a formal application.   This application is dated January 21, 1906.   In it Mr. Lessnau stated that his occupation was that of a driver of a dirt wagon, and his place of business at 730 Hancock street, and that he had no employer, and took jobs of hauling dirt, etc.   At the time he executed this application he was subjected to a physical examination.   The formal application for membership, together with the physical examination, were forwarded to Chicago, and the benefit certificate of insurance sued upon in this action was issued.   After both parties rested, the court directed a verdict for the plaintiff.   A motion for a

new trial was overruled, and defendant brings the case here by writ of error.

We quote from the brief of counsel:

"The case presents seven principal questions:

"*First.* Did the court err in not requiring the plaintiff to produce testimony showing that proofs of death were furnished or offered to be furnished?

"*Second.* Did the court err in denying defendant's motion to direct a verdict for the defendant on the ground that there was no evidence to show that the insured was a member in good standing of the Catholic Order of Foresters, nor that he had complied with the rules, regulations, and by-laws provided in the constitution and by-laws?

"*Third.* Did the court err in not permitting the defendant to amend its plea and notice?

"*Fourth.* Should the court have directed a verdict for the defendant?

"*Fifth.* Did the court err in not submitting the case to the jury and giving defendant's requests to charge?

"*Sixth.* Did the court err in not submitting to the jury defendant's five questions of fact?

"*Seventh.* Did the court err in directing a verdict for the plaintiff?"

Groups 1 and 2 may be considered together:  Under defendant's plea and notice, the only defense urged is that fraud, misrepresentation, and deceit were practiced by deceased as to his occupation in obtaining the benefit certificate, and for that reason he was never a member of defendant order.  (*a*) Under this plea and notice, it was not incumbent upon the plaintiff to show proofs of death. (*b*) Under defendant's plea and notice, it was not incumbent upon plaintiff to prove that deceased was a member in good standing at the time of his death.  See *Hare* v. *Protective Ass'n,* 151 Mich. 225 (114 N. W. 1009), and cases cited; *O'Neill* v. *Assurance Co.,* 155 Mich. 564 (119 N. W. 911).

3. Did the court commit reversible error in declining to permit defendant to amend its notice under the plea, so as to show deceased had changed his employment from that of driver of a dirt wagon at the time of his formal applica-

tion to a prohibited employment at the time of his death ? The case was commenced December 27, 1907. The hearing was had in August, 1909. After the plaintiff had made her case, and defendant had entered upon its defense, the following occurred:

"*Mr. Snyder:* Then I will ask leave to amend the plea.

"*Mr. Dohany:* That is objected to, your honor.

"*Mr. Snyder:* Upon what ground? A plea may be amended at any time.

"*The Court:* No question about that. It is entirely within the discretion of the court, but I take it that counsel come into court on one theory.

"*Mr. Snyder:* We are in court on both theories.

"*Mr. Dohany:* They want to ride two horses now. They are not satisfied with riding one.

"*The Court:* The difficulty is here: If this were the plaintiff asking for leave to amend, we could do it very nicely by giving him leave to withdraw a juror and giving the defense an opportunity to prepare. In this case the defense is asking leave to amend their plea, and I think, in view of the fact that counsel have come into court with this plea with eight different notices attached to it, I am inclined to think, it would be an abuse of discretion to permit the amendment at this time, unless counsel for the plaintiff will consent. If the plaintiff will consent to withdraw a juror and giving himself a chance to prepare for this new defense, I will then grant it. I don't believe I can compel the plaintiff to do that.

"*Mr. Dohany:* We certainly could not do that under the circumstances, your honor. * * *

"*Mr. Snyder:* It doesn't seem to be so much a matter of discretion as it does that the amendment should be allowed. I don't think the counsel for plaintiff is taken by surprise in this matter.

"*The Court:* He tells the court that he is, and he is a reputable practitioner, and the court believes him.

"*Mr. Snyder:* I think we should be allowed to amend.

"*The Court:* I will give you the benefit of an exception. Exception for defendant."

It will be observed the case had been at issue a year and a half at this time. It does not appear that any new information as to the facts had come to defendant. The trial was half over. The record does not show such an

abuse of discretion as to call for the interference of this court. See *Hare* v. *Protective Ass'n*, 151 Mich. 225 (114 N. W. 1009), and cases cited; *O'Neill* v. *Assurance Co.*, 155 Mich. 564 (119 N. W. 911). The record shows that at the time deceased signed the preliminary application in November he was a polisher and buffer. The following appears in section 158 of defendant's by-laws:

"No officer or member of any department or branch of of the order shall have any authority, power or right to represent or act as the agent of the order, except in the performance of the duties specifically imposed upon him by these laws, rules and regulations. * * *"

After the preliminary application was made, it was read at a regular meeting of the subordinate court, and applicant's fee of $2 paid as provided in section 222. The application was indorsed by two members in good standing, as required by section 221. The recording secretary of the subordinate tent appointed two members who investigated deceased's occupation, as required by section 224. This investigating committee recommended the admission of Mr. Lessnau by a written report to the recording secretary. Deceased was thereafter duly elected a member of defendant order as provided in sections 228 and 229. It is not probable, in view of what occurred, that the subordinate court did not know at this time all about the applicant's occupation. When the formal application was made, deceased truthfully stated his occupation. The certificate was issued and deceased paid all that was required of him up to the time of his death. To refuse to pay now does not appeal to our sense of justice. We think the court made a proper disposition of the case. *Wagner* v. *Knights of Honor*, 128 Mich. 660 (87 N. W. 903); *Hoskins* v. *Loan Ass'n*, 133 Mich. 505 (95 N. W. 566); *Dorff* v. *St. Adalbert's Aid Society*, 157 Mich. 516 (122 N. W. 82).

Judgment is affirmed.

Bird, C. J., concurred with Moore, J.

BLAIR, J. I agree with Mr. Justice MOORE. The benefit certificate issued by defendant and containing the agreement of the parties contains the following clause:

"The statements made by said member in the proposition blank, signed by him at the time of his proposal as a member of said Catholic Order of Foresters, are hereby acknowledged and declared by him to be warranties and to be made a part of this contract."

Under this clause, defendant was as much chargeable with notice of the applicant's occupation at the time as though the statements of the proposal blank had been printed *in extenso* in the certificate, and, having received his money, is estopped to claim that such occupation rendered him ineligible to membership. *Dorff* v. *St. Adalbert's Aid Society, supra.* Under its plea, defendant assumed the burden of proving that plaintiff's decedent falsely stated his occupation in the formal application as that of driver of a dirt wagon. The record is barren of evidence that Mr. Lessnau's statement was false at the time it was made, and such evidence as there is tends to support his wife's hearsay testimony that he was in such occupation.

I think the trial judge made a correct disposition of the case, and the judgment should be affirmed.

OSTRANDER, MCALVAY, and STONE, JJ., concurred with BLAIR, J.